ELMER KIME v. CARL KOCH AND ANOTHER.
WAYNE SNELL v. SAME.
ARTHUR DeRAAD v. SAME.
ERWIN L. SCHMIDT v. SAME.
EDWIN M. HANSEN v. SAME.[1]

January 7, 1949.

Nos. 34,736, 34,737, 34,738, 34,739, 34,740.

---

[1]Reported in 35 N. W. (2d) 534.

*John J. Sexton,* for appellant.

*Baudler & Baudler,* for respondents Elmer Kime, Wayne Snell, and Arthur DeRaad.

*Luther M. Bang,* for respondents Erwin L. Schmidt and Edwin M. Hansen.

KNUTSON, JUSTICE.

Defendant Carl Koch appeals from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial. Originally, separate actions were commenced by each of the five plaintiffs against Carl Koch and Frank McGreary. The cases were consolidated for trial, and the appeals likewise have been consolidated here. Verdicts were rendered by the jury in favor of each of the plaintiffs against both defendants. Only defendant Koch has appealed.

Many of the facts involved are not in dispute. Plaintiffs' injuries arose out of a collision which occurred about 1:30 p. m. on April 2, 1947, between an automobile owned and driven by defendant Koch, in which all five plaintiffs were riding as gratuitous guests, and an automobile owned and driven by defendant McGreary.

Plaintiffs and defendant Koch were all employes of Geo. A. Hormel & Company at Austin. On the day of the collision, the five plaintiffs, together with defendant Koch, left Austin about 1 p. m., intending to go to Grand Meadow, which is located about 23 miles east of Austin, to attend the funeral of a fellow employe. Two of the plaintiffs were riding in the front seat with Koch, who was

driving, and the other three were riding in the back seat of the automobile. Koch's automobile was a 1940 Plymouth four-door sedan, in good working condition. In order to reach their destination, they traveled over trunk highway No. 16, which runs generally in an east-west direction. It is paved to a width of 20 feet, with a black tar line down the center, and on each side of the paved portion there is a sod shoulder about 8 to 11 feet in width, level with the pavement. The shoulders slope gradually into a ditch on each side, which is approximately three feet deep on the south side, two and one-half feet deep on the north side, and about eight feet wide, or slightly more. The ditch is grown up to grass and weeds. At the point of the collision and for a considerable distance both east and west therefrom, the highway is straight and comparatively level. There are no obstructions to the view of a driver going in either direction at the point of the collision.

When the Koch car had proceeded about 13 miles east, or slightly northeast, from Austin, defendant McGreary, driving his 1931 Buick automobile, approached from the opposite direction. Witnesses variously estimated that the Koch automobile was traveling from 35 to 48 miles per hour, and the McGreary car was estimated to be going about the same speed. When the McGreary car was first observed, it was traveling on its right side of the road. When the two automobiles were still some distance apart, the McGreary car swung to the south lane of the pavement, that is, to the side of the pavement that was on its left. The principal dispute in the testimony relates to the distance that separated the two automobiles at the time McGreary swung into the wrong lane of the pavement. Defendant Koch and his witnesses testified that the two cars were then only 70 to 80 feet apart. Plaintiffs' witnesses estimated the distance at from 400 to 600 feet.

When the automobiles were very nearly together, Koch turned his automobile to the left into the north lane of the pavement, and at or about the same time McGreary swung his automobile in the same direction, with the result that the two cars came together. They traveled only a very short distance after colliding, and the

Koch car ended up on the north side of the pavement almost parallel with the pavement. The McGreary car was some 10 or 12 feet farther to the southwest and on or near the south side of the pavement. All occupants of the Koch car were seriously injured.

While numerous assignments of error have been made by Koch, his principal contention is that the evidence so conclusively establishes the fact that only a short distance separated the two cars at the time the McGreary car swung to the south lane of the pavement that it appears as a matter of law that McGreary created an emergency of such a nature that Koch had no opportunity to avoid the collision and that the injuries sustained by plaintiffs were caused solely and exclusively by the negligence of McGreary. It is the contention of plaintiffs that the jury was justified in finding that the distance that separated the cars when McGreary swung to the wrong lane of the pavement was such that Koch, had he used due care, could have avoided the collision by either swinging onto the shoulder on his side of the highway or driving into the ditch, or by slowing up the rate of his speed to such an extent that it would have enabled the McGreary car to return to its own lane, and, also, that it was negligence on the part of Koch to swing to his left side when the cars approached each other.

It is true that the greater number of witnesses substantiated the theory of defendant Koch, but it is not for us to say where the evidence preponderates. There is evidence, such as actual measurements taken after the collision, that supports plaintiffs' contentions. It may be, had we been sitting as triers of fact, that we would be more inclined to believe Koch's witnesses than those on the opposite side, but we must now take the evidence most favorable to the prevailing party, unless such evidence is demonstrably unworthy of belief. The testimony of plaintiffs' witnesses was not discredited, unless we can say that numbers must prevail, and the jury could, and did, accept plaintiffs' version of the case. Koch, in a manner, supports the claim that there was considerable distance separating the cars at the time the danger became apparent and that he did

have an opportunity to size up the situation before the crash. The following testimony of Koch is significant:

"Q. So whether the car turned sharp or gradual from that point you realized he was getting over into your lane?

"A. I realized he was.

"Q. And Carl, I presume you assumed that he would get back into his own lane?

"A. Sure, that is what I figured at first but he eventually didn't do it."

Koch contends that the trial court erred in giving the emergency rule. While the rule was not given in the precise language stated in Johnson v. Townsend, 195 Minn. 107, 261 N. W. 859, it was sufficiently stated by the court in the following language:

"* * * You are instructed that where one is confronted with a sudden peril requiring instantaneous action, he is not in determining his course of action held to the exercise of the same degree of care as when he has time for reflection, and in the event that a motorist suddenly meets with an emergency which would naturally overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, he is not negligent providing he used such care in meeting such an emergency as an ordinarily prudent man would under such circumstances. The rule of sudden emergency cannot be successfully invoked by one who has brought that emergency upon himself by his own acts, or who has not used due care to avoid it. A person is not deemed to be guilty of negligence when in the face of a sudden danger or emergency he does not exercise the wisest judgment, nor is his conduct to be judged after the event solely by the result. One faced with an emergency is bound to exercise only that caution and judgment which could reasonably be expected from an ordinarily prudent man under the same circumstances but that rule of sudden emergency cannot be successfully invoked if the party has brought that emergency upon himself or failed in the application of due care to avoid it."

While it is often unfruitful to attempt to fit the facts of one case into another, for the reason that they are seldom the same, we believe that cases cited by Koch are distinguishable from the case now before us. In Hoehne v. Mittelstadt, 252 Wis. 170, 31 N. W. (2d) 150, the collision occurred on an extremely foggy day. Visibility was poor. Car A turned out of his lane of traffic intending to pass a truck going in the same direction. He collided with car B going in the opposite direction. The distance separating the cars, in view of existing atmospheric conditions, was such that car B had no chance to avoid the collision.

In Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134, traffic was heavy. Defendant was traveling north. He met a string of three or four cars coming from the north. The third car in the string suddenly turned out of line into defendant's lane of traffic. Defendant swung to the right, but did not have time to avoid the collision. We held, as a matter of law, that he was guilty of no negligence.

In the instant case the day was clear. The pavement was dry. There was no traffic to interfere with Koch's driving. The distance separating the cars, if we accept the testimony of plaintiffs' witnesses, which we must, was much greater than in the above cases. The jury could find that it was negligence on the part of Koch to turn to the left into the wrong lane of travel instead of to the right onto the shoulder of the highway. If he had not made any turn at all, the collision might have been averted. He also could have reduced his speed after the danger became apparent, in which event McGreary probably would have had time to return to his own side of the road. The physical and demonstrable facts are not so conclusive as to negate the testimony of plaintiffs' witnesses, as we held they were in the Cosgrove case. Having observed the danger approaching him, it was the duty of Koch to exercise due care to avoid the impending collision. "He proceeded headlong to encounter danger coming at him." Hinman v. Gould, 205 Minn. 377, 381, 286 N. W. 364, 366.

Under all the circumstances, it was proper to submit the question of Koch's negligence to the jury.

Koch also contends that there was misconduct of counsel which demands a new trial. The case was tried during extremely warm weather. During the course of the trial, one of plaintiffs' counsel procured a fan and placed it in a position where it would furnish some relief to the jury from the heat. It might have been better had counsel directed one of the court attendants to set the fan in place, but we do not believe that this minor incident would be sufficient to influence the jury's decision.

Parts of the closing argument of counsel for plaintiffs are also assigned as grounds for a new trial. While the argument was vigorous, the trial court did not believe it would justify a new trial, and in this we do not believe the court abused its discretion.

It is also claimed that two members of the jury stopped at the scene of the collision and made some measurements during the trial. These claims are vigorously denied by the affidavits of the two members of the jury involved. The entire jury was taken to the scene of the collision during the trial. The two members involved drove past the place on their way to and from Austin. Here again the trial court has passed upon the matter, and we do not believe that there was an abuse of discretion in denying a new trial on this ground.

We have examined all other assignments of error, but find no ground for reversal.

Affirmed.