DALE BARRIE, BY AMBROSE BARRIE, HIS FATHER AND
NATURAL GUARDIAN, AND OTHERS v. ROBERT
ACKERMAN, BY HIS GUARDIAN AD LITEM,
JOHN KOPPI, AND ANOTHER.
LEO FISHER, APPELLANT.

83 N. W. (2d) 497.

May 31, 1957—No. 37,042.

2

English & Velta, for appellant.

Freeman, Peterson, Hoppe & Gaughan and Robert C. Holtze, for respondent Ackerman.

Sullivan, Stringer, Donnelly & Sharood, for plaintiffs-respondents.

KNUTSON, JUSTICE.

This is an appeal from orders denying motions of defendant Leo Fisher for a new trial.

This case arises out of a collision between an automobile driven by defendant Robert Ackerman and one driven by defendant Leo Fisher. Plaintiffs were passengers in the Ackerman car. They individually sued the drivers of both cars and the actions were consolidated for trial.

The collision occurred on State Highway No. 47 near Currie, Minnesota. At the point of the collision the highway runs generally east and west. To the east of the point of the collision the highway is straight and level. A short distance to the west of that point the road slopes downward to a bridge crossing a small stream and again rises up a small hill. The road at the place of the collision, at the time thereof, was under repair, and, beginning at the point where the road levels out after rising from the bridge, there was a windrow or pile of crushed asphalt which covered approximately the south one-third of the road. The highway at that point was 36 feet wide, leaving from 20 to 25 feet north of this windrow available for driving. The drivable portion of the road had been scarified and was somewhat rough. There was ample room for two cars to pass on the space available, but, according to one witness, the cars would have to drive at a reduced speed because of the condition of the road. The windrow was variously estimated by the witnesses to be from 500 to 800 feet in length. It was 2½ feet high at the north side and sloped gradually to the south.

Defendant Fisher lives in Nebraska. On the day involved, he had

worked all day as foreman of a construction job putting in sewer and water mains. About 6 p. m. he and two companions, Robert J. Murray and John Messerly, left Norfolk, Nebraska, on a fishing trip. Fisher drove all the way until the collision, a distance of 230 miles. Prior to the accident, he drove over Highway No. 47 in an easterly direction to the home of Donald Cohrs, who was to accompany the others on the fishing trip. On the trip to Minnesota they stopped at Sioux City for supper, where they spent about 45 minutes. Prior to going to the Cohrs home, they stopped to pick up a 6-pack of beer, and they each drank a can of beer at the Cohrs home. There is some evidence that they also had a can of beer at a tavern. They spent about 45 minutes at the Cohrs home, and shortly after midnight they left to complete the trip to northern Minnesota, where they intended to do their fishing. To reach their destination, they again traveled over highway No. 47, this time in a westerly direction. The testimony of all the occupants of the Fisher car was that they traveled on the right half of the portion of the highway available for travel, with their lights on low beam, at a speed of not over 35 miles per hour.

During the night of the collision, defendant Ackerman, with both plaintiffs and another young man who was in military service at the time of trial, had been to a dance at Valhalla, a place located nearby. Ackerman lived in the neighborhood and was thoroughly familiar with the highway. He had driven over it at the place where the collision later occurred at least three times during that same evening. The place of the dance was located north of the highway. Shortly before the collision, Ackerman was approaching the highway from the north when the witness Walter Silvernale, Jr., passed him as he was facing south a short distance north of the highway, at a point about a mile and a half west of the collision. Ackerman thereafter entered the highway, passed Silvernale, and was about 300 feet ahead of him when the collision occurred. Silvernale testified that he was traveling about 35 to 40 miles per hour when Ackerman passed him.

Ackerman had some trouble with his lights during the evening, and it is undisputed that prior to the collision only his right front headlight was burning.

Fisher and the occupants of his car testified that, when they first

saw the Ackerman car approaching, it was from 600 to 1,500 feet away. As they approached it, they observed only one headlight and did not know on which side of the car it was until just before the impact. They said that the Ackerman car suddenly swerved into their side of the road and then tried to turn back but that the collision occurred before he could get back on his half of the available driving portion of the road.

Ackerman said that when he first saw the Fisher car it had no headlights burning but that the lights came on when they were only 100 feet apart. None of the occupants of the Ackerman car knew what happened. Plaintiff Wayne Carter was sleeping at the time, and plaintiff Dale Barrie said that he did not know what happened. The third passenger did not testify as he was then in military service. Walter Silvernale, Jr., whose car Ackerman passed some distance west of the collision, said that he saw the lights of the Fisher car when the cars were at least half a mile apart.

The collision occurred about 100 to 125 feet east of the west end of the windrow. The left side of each car collided. The cars ended up in substantially the direction they were going, with the Ackerman car tipped over so that the right side lay on the windrow. The Fisher car was on its wheels practically on the north end of the shoulder. There was room between the two vehicles to drive a car between them.

In a special verdict, the jury found both defendants negligent and the negligence of each a proximate cause, and it awarded damages to plaintiffs against both defendants. The only question presented here is whether the evidence sustains a finding of negligence against Fisher. He contends that the negligence of Ackerman was the sole proximate cause of the collision.

Fisher's contention is based largely on the argument that the only evidence of negligence on his part is Ackerman's testimony that Fisher was driving without lights and that this testimony is unworthy of belief in view of the testimony to the contrary of all other witnesses, including the only disinterested witness, Silvernale, and the physical facts discernible from the position of the cars after the collision. If Ackerman's testimony stood alone in establishing the negligence of Fisher, we would be inclined to agree with Fisher, as Ackerman's testimony, particularly with reference to the absence of lights on the Fisher car, does seem

incredible. However, there is other evidence from which an inference of negligence on the part of Fisher is justifiable.

In most cases a driver of an automobile may assume that the driver of an approaching car will stay on his side of the road, but, when there is reason to believe that an approaching car on the wrong side of the road will not or cannot return to its lane of travel, a jury question may arise as to the negligence of the driver who makes such observation and yet fails to use reasonable means to avoid such collision.[1]

In Kapla v. Lehti, 225 Minn. 325, 334, 30 N. W. (2d) 685, 691, where many of the cases on this subject are collected, we said:

"In numerous of our decisions we have held that the driver of an automobile on his own right side of the road must exercise due care to avoid collisions with other vehicles, even with those on his side of the road, and that, while he may assume that an approaching vehicle on his side of the road will turn and get on its right side, he will not be permitted to act on the assumption where the factual basis for it has disappeared, as, for example, where it becomes apparent that the driver on the wrong side of the street either will not or cannot turn back to his right side. The fact that a motorist is on the wrong side of the road will not justify another driver in running him down."

Here, Fisher knew that he had been driving a long distance after working all day and must have known that his reaction time was somewhat impaired. He knew that he was meeting a car having only one headlight. He did not know on which side of the car the light was until just before the impact. He knew that the road was in a condition of repair where it required more than ordinary caution in meeting another car. The jury could well find that the Ackerman car was 75 feet or more west of the windrow when it swerved north into Fisher's lane of travel. It could find from Fisher's own testimony that, when he observed it swerve, he was on the east end of the windrow. It is conceded by all that the accident happened about 100 to 125 feet east of the west end of the windrow. It must follow that the Ackerman car traveled at least 175 to 200 feet from the time it first swerved into Fisher's half of the

[1]Kime v. Koch, 227 Minn. 372, 35 N. W. (2d) 534; Katlaba v. Pfeifer, 238 Minn. 298, 56 N. W. (2d) 725.

road until the collision occurred. Assuming that the cars were traveling at the same rate of speed, as the jury could find, the Fisher car must have traveled at least the same distance as the Ackerman car, which would put them at least 350 to 400 feet apart when Fisher first observed the Ackerman car come over to his side of the road. When the Ackerman car swerved to the north, Fisher kept right on driving straight ahead at the same rate of speed, without applying his brakes, until they were almost together. If he had turned right or had put on his brakes, the collision might well have been averted. There was 20 to 25 feet of driving space on the road. The ditch on Fisher's right-hand side was not dangerous. Fisher testified that the Ackerman car was a half car width into his half of the road and then tried to turn back. If Fisher had turned 3 or 4 feet farther to the right, in all probability the collision would not have occurred. The mere fact that a car could be driven between the two automobiles after the collision does not have great probative value. The cars collided in such a manner that the jury conceivably could infer that each traveled in somewhat the same manner in a sideways motion as a result of the collision. Taking the credible evidence as a whole most favorable to the verdict, as we must in viewing the sufficiency of the evidence, we are satisfied that the jury's verdict determining that both defendants were guilty of negligence is reasonably sustained by the evidence.

Affirmed.