# STATE, BY ROBERT W. MATTSON, ATTORNEY GENERAL, AND ANOTHER v. LILLIAN V. SCHOBERG.

155 N. W. (2d) 750.

January 19, 1968—No. 40,514.

*John C. DeMoss,* for appellant.

*Douglas M. Head,* Attorney General, *Norman R. Carpenter,* Deputy Attorney General, and *Donald R. Bundlie,* Special Assistant Attorney General, for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying appellant's motion for a new trial.

The case involves a condemnation proceeding brought jointly by the State of Minnesota on behalf of the Highway Department and by the Board of Regents of the University of Minnesota for the acquisition of a piece of property owned by appellant in the Seven Corners area of the city of Minneapolis.

The description of the property is not important. It consisted of a lot 40 feet in width fronting on the street and 165 feet in depth, on which was located a 2-story frame and stucco house built prior to 1890. The house at the time of the condemnation proceeding was rented out to university students for the sum of $85 per month.

The commissioners appointed by the court pursuant to our statute awarded appellant $9,700 for the property. She appealed to the district court, where a jury awarded her the same amount. She appeals here on the grounds (1) that the court erred in denying a new trial for prejudicial conduct of the attorney for the condemnors in requesting a view of the premises in the hearing of the jury, which view was denied by the court; (2) that the court erred in denying a new trial on the grounds that appellant avers she has an expert witness on value who would testify to an amount higher than any of the experts who did appear; and (3) that it was error on the part of the trial court to permit the condemnors to show on cross-examination that 2 or 3 years prior to the condemnation appellant had purchased a three-fourths interest in the property in a partition sale for the sum of $6,000.

During the trial, counsel for the condemnors requested, in the hearing of the jury, that the court permit the jury to view the premises.[1] The attorney for appellant promptly moved for a mistrial on the ground that such request in the hearing of the jury was prejudicial. The attorney for appellant stated, outside the hearing of the jurors, that he objected "to a viewing on the grounds that the building has changed and it is gone, and I don't know what purpose the viewing would [have]." Before the court could rule on this motion, appellant's attorney also

---

[1] See, Minn. St. 546.12.

said, "I request also a corrective instruction on this. I think it is highly prejudicial for the state to get up and request a viewing before the jury."

In its instructions to the jury, the court said:

"I also want to instruct you that there was a request for a viewing by the state of this property, but the Court denied it because it felt that there was a substantial change in the property and the surrounding area, that is the building had been removed and there was nothing but the vacant land that was left there to be seen, and I think it has been amply described and located, and the parties have told you all about the surroundings of the property, so I didn't think it was necessary to take the jury out there to view the property."

While we think it would be better practice to make such a request out of the hearing of the jury, particularly where the request is apt to be denied, it is clear there was no harm done here and the court did give the jury a cautionary instruction as requested by the attorney for appellant. We are satisfied that the jury understood that the reason they were not to view the premises was because the property had been changed to such an extent that there was nothing to be seen except the bare land.

■ As part of her motion for a new trial, appellant submitted an affidavit in which she stated that she had a witness who was familiar with the property in the area and who would testify to a value greatly in excess of the amount awarded, but that such witness was not available and could not be found at the time of trial. She stated she had since located such witness and he was willing to so testify.

Whether a new trial should be granted on the grounds of newly discovered evidence is a matter resting largely in the discretion of the trial court. Such motion will rarely be granted where the party seeking a new trial has knowledge of the witness at the time of the trial. It is clear from this record that appellant knew about the witness during the trial; and while it does not appear what effort she made to locate him, she made no effort to have the case continued until she could do so, but proceeded with the trial, apparently on the assumption that the jury would accept her testimony as to value without any additional expert

proof. She submitted no expert evidence of any kind at the trial, although she did have two experts testify before the commissioners. The only value evidence at the trial aside from her own was that of witnesses for the condemnors. We find no abuse of discretion on the part of the trial court in denying a new trial on this ground.

■ The issue most urgently argued by appellant relates to the cross-examination of appellant as to what she had paid for the property when she purchased a three-fourths interest in a partition action 2 or 3 years prior to the condemnation. All the expert witnesses, including those called by the condemnors and the two experts who testified for appellant before the commissioners, stated that in their opinion the market value of the property was substantially what the jury awarded, or slightly less. In the trial of the action, appellant stated that in her opinion the property was worth $38,001. She based her estimate of value on the approximate number of students at the university. She had no experience in appraising the value of real estate and, as stated, her opinion of value was far out of line with that of anyone else. It thereupon appeared on cross-examination that about 3 years before the condemnation her brother had owned a three-fourths interest in the property and she had a one-fourth interest. They could not agree on how the property should be handled, so it was sold to appellant at public sale in a partition suit for the sum of $8,000, of which $2,000 represented her interest.

The authorities are hopelessly divided on the question of whether sales of similar property are admissible in establishing market value of the condemned property. We are committed to the rule that such evidence is inadmissible as substantive evidence of value. State, by Lord, v. Winiecki, 263 Minn. 86, 115 N. W. (2d) 724; 6 Dunnell, Dig. (3 ed.) § 3071. We have not had occasion to pass upon the question as to whether the price paid for the condemned property is admissible to establish its present market value. On this issue it seems the authorities uniformly, or at least nearly so, hold such evidence is admissible if it meets certain requirements. In 5 Nichols, Eminent Domain (Rev. 3 ed.) § 21.2, we find the following statement:

"When a parcel of land is taken by eminent domain, the price which the owner paid for it when he acquired it is one of the most important

pieces of evidence in determining its present value, provided the sale was recent, and was a voluntary transaction between parties each of whom was capable and desirous of protecting his own interests, and no change in conditions or marked fluctuation in values has occurred since the sale."

1 Orgel, Valuation under Eminent Domain (2 ed.) § 136, states that the courts are unanimously agreed that this evidence is admissible. See, also, United States v. Certain Parcels of Land (3 Cir.) 144 F. (2d) 626, 155 A. L. R. 253, and Annotation at 262; 29A C. J. S., Eminent Domain, § 273(5).

We agree that the rule ought to be that such evidence is admissible if not too remote in time and if other factors affecting market value have remained reasonably stable so that they are the same as the factors which existed at the time of the condemnation. We have applied the rule in other contexts. Thus, in Uhlman v. Farm, Stock and Home Co. 126 Minn. 239, 243, 148 N. W. 102, 103, where the value of a horse was in issue, we held that "[e]vidence of what an article sold for in the market" was material evidence of its value. In Zimmerman v. Mendelkow, 160 Minn. 330, 200 N. W. 297, 201 N. W. 289, we upheld the trial court's refusal to admit the previous purchase price because there was other evidence of value, but we said that under certain circumstances the previous purchase price may be shown as evidence of value.

As has been stated above, the evidence here came in by way of cross-examination of the owner to test her opinion as to the present value of the property. We have, inferentially at least, indicated that even where evidence of sales of similar property is inadmissible, it may be proper in cross-examination of a witness to test his knowledge of market value. Thus, in a comprehensive opinion in Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897, in discussing the determination of the amount an owner of condemned property is entitled to receive, we held that evidence of the price paid for similar property is inadmissible, saying (201 Minn. 456, 277 N. W. 401, 124 A. L. R. 906):

"We are therefore of opinion that the testimony here under discussion was improperly permitted to come into the case and was prejudicial.

It was not put into the case on cross-examination as a test of knowledge upon which the expert based his opinion. As we have seen, there is a clear line of demarcation between substantive proof and proof which merely goes to 'nullify his [the expert's] testimony.' "

5 Nichols, Eminent Domain (Rev. 3 ed.) § 21.3[3], states that such evidence is admissible on cross-examination to test the knowledge, experience, and investigation of a value witness and thus affect the weight to be given to his opinion. 1 Orgel, Valuation under Eminent Domain (2 ed.) § 145, states that such evidence is admissible on cross-examination. If the price paid for similar property, inadmissible under our practice as substantive evidence, is admissible on cross-examination, it must follow that the price paid for the condemned property, which is admissible upon proper foundation, is even more clearly admissible on cross-examination.

Under our practice, an owner of property is permitted to express his opinion as to its value without further qualifications. He is subject to the same rules of cross-examination to test his knowledge and the soundness of his opinion as is an expert witness. Here the owner's opinion was so far out of line with those of all other credible witnesses, including the experts called by the owner before the commissioners, that there was good reason for admitting any evidence of probative value on cross-examination to test her knowledge of property values. The court carefully instructed the jury as to how to weigh the owner's opinion:

"You are instructed that the owner of property is allowed to give his or her opinion as to the value of his or her property without any other qualifications than that of ownership. In weighing the value of such testimony, you will apply to the testimony of such owners as to values the same tests as have been given to you with reference to other value witnesses. That is, you will take into consideration the experience of the owner, his or her knowledge of values of like property in that immediate vicinity, and his or her knowledge of sales and purchases, and his or her knowledge and experience in the uses to which such property is naturally adapted or may be adapted in the immediate future, and such other qualifications as in your good judgment give weight to his

or her testimony on the subject, and also his or her interest in the outcome of the lawsuit."

Market value which an owner is entitled to receive for his property in a condemnation proceeding is that price which the property will bring in a sale between a willing buyer, not compelled to buy, and a willing seller, not compelled to sell. Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305. While a public sale in a partition suit is not, strictly speaking, a sale between a willing buyer not compelled to buy and a willing seller not compelled to sell for the reason that a part owner of the property may not wish to either buy or sell, our statutes authorizing such proceedings do have some protective provisions calculated to obtain for the property the best price possible. Thus, the sale must be confirmed by the court. Minn. St. 558.07, 558.20, 558.21. It is the duty of the referees and the court to obtain the highest possible price for the benefit of those entitled to receive the proceeds. Siekert v. Soester, 144 Neb. 321, 13 N. W. (2d) 139, 152 A. L. R. 527; 40 Am. Jur., Partition, § 84. The court may refuse to confirm the sale where the price is disproportionate to its value. Johnson v. Avery, 56 Minn. 12, 57 N. W. 217. Partition suits are governed by principles of equity, and owners may present evidence of value in contesting confirmation. Grimm v. Grimm, 190 Minn. 474, 252 N. W. 231; Swogger v. Taylor, 243 Minn. 458, 68 N. W. (2d) 376.

It would be reasonable to assume that if an owner or one who is entitled to receive the proceeds, or part thereof, of the property sold does not contest confirmation, the sale price fairly represents the value of the property. Thus, the sale price has probative value, at least for the purpose of testing the weight to be given to the opinion of the owner in this case.

We have held in other types of cases that the price obtained at a public sale of property by auction, whether under a judicial sale or not, is competent, though not conclusive, evidence of value. Thus, in Strimling v. Union Ind. Co. 176 Minn. 26, 28, 222 N. W. 512, 513, a mortgage foreclosure action, we said:

"* * * The price obtained for property at a public sale by auction,

whether under judicial sale or otherwise, is generally held to be competent evidence of value of the property."

Numerous cases from foreign jurisdictions in support of this rule are cited in the opinion.

Again, in In re Estate of Nelson, 195 Minn. 144, 151, 262 N. W. 145, 148, involving the allowance of a claim filed in probate court for a deficiency after a foreclosure sale of secured property, we said:

"* * * The highest bid received at a public sale is evidence of the market value of the property offered for sale."

We find no reversible error.

Affirmed.