CITY OF BLOOMINGTON v. JULIAN VINGE AND OTHERS.

JOHN E. HAVERLY AND ANOTHER, APPELLANTS.

169 N. W. (2d) 752.

July 25, 1969—No. 41297.

*T. H. Wangensteen,* for appellants.

*John Pidgeon* and *Adrian E. Herbst,* Bloomington City Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying appellants' motion for a new trial.

John E. Haverly and Lois K. Haverly, referred to herein as appellants, are the fee owners of a 37-acre tract of land located in the southwest corner of the intersection of France Avenue South and 94th Street in the city of Bloomington. They purchased the property in December 1965 from Arthur B. Arneson, now deceased, and Loyal Thompson. According to Roger Satterlund, the agent in the sale, the entire transaction, from first sight of the property to consummation of the deal, took only a few hours. Arneson desired to sell quickly to obtain cash for another deal.

In April 1966, Bloomington began condemnation proceedings to acquire appellants' tract for park purposes. Commissioners were appointed and in September 1966 they awarded appellants $46,000 for the property plus $150 appraisers' fees. Both sides appealed to the district court from this award.

At the trial, which commenced October 31, 1967, estimates of the market value of the property ranged from about $30,000 to

$200,000. Appellants' experts estimated the value of the property as zoned at that time at about $100,000 and, if rezoned to permit apartments, at about $175,000. Appellant John E. Haverly made a $200,000 estimate. On cross-examination, Haverly was required, over objection, to disclose the price he paid for the property in December 1965, which was approximately $28,000. The basis of the objection was that this was a "forced sale" and therefore not indicative of fair market value. Satterlund, the sales agent, testified as to the circumstances of the sale, and in instructing the jury the court indicated that those circumstances should be considered in evaluating the weight to be attached to the evidence of the price paid by the Haverlys.

The jury awarded appellants $35,000. Subsequently, a member of the jury contacted appellants and revealed that during the trial another member of the jury had gone out on his own to examine the property and had expressed opinions to the other jurors on the basis of what he had seen. This viewing was clearly unauthorized. However, prior to hearing any testimony in the case the jury as a whole, together with the trial judge and the attorneys on both sides, had viewed the property. The juror who contacted appellants and another juror also indicated by affidavits that the jury had given considerable weight to the price appellants had paid for the property.

Appellants moved for a new trial, including the affidavits from the two jurors with their motion. From an order of the court denying the motion this appeal was taken.

Appellants raise these issues: (1) Whether the unauthorized view by one juror requires a new trial; (2) whether the court erred in admitting evidence of the price paid by appellants for the property; and (3) whether the damages awarded were insufficient and given under the influence of passion and prejudice.

■ The issue relative to the unauthorized view, apparently, is not whether it occurred, but whether it resulted in such prejudice to appellants as to require a new trial. The only evi-

dence of the view and its effect is found in the affidavit of one of the two jurors who dissented from the five-sixths verdict. In it she states:

"During the course of deliberations, a juror, who lived in Richfield, stated that on Saturday, November 4th, he had gone out to this property on his own * * * and he reported to me in the presence of the jury that he had so done and that in his opinion no houses or structures could be built on the low ground, and expressed other opinions thereon, based upon his personal inspection of the property on said day."

The affidavit of the other dissenting juror does not mention the unauthorized view.

The trial judge in his memorandum pointed out that the affidavit does not indicate whether the offending juror made any tests or determinations that could not have been made by the other jurors when all viewed the premises nor that the jurors gave any weight to statements made by the offending juror. Because all the jurors had an opportunity to view the pond on the low ground, the judge decided that the other jurors could well have arrived at the opinion from their own viewing that no houses could be built on that site. He therefore found that no prejudice resulted from the unauthorized view.

The rule in this state on the effect of unauthorized jury views was stated by this court in Briggs v. Chicago G. W. Ry. Co. 248 Minn. 418, 425, 80 N. W. (2d) 625, 632:

"Although it is misconduct for jurors to take an unauthorized view of the scene of an accident, or of an instrumentality involved in an accident, a new trial should not be granted for such misconduct if the trial court is reasonably certain that no prejudice resulted, and the duty of determining whether such misconduct was prejudicial, like other questions of fact, rests primarily upon the trial court and its decision thereon will be reversed only for an abuse of discretion. If, however, it is not reasonably certain that no prejudice resulted, a new trial should be

granted. Clearly, not·every unauthorized view of the locus in quo requires the setting aside of a verdict."

In the Briggs case one of the jurors had gone to look at a train engine on which the plaintiff allegedly was injured. This court sustained the denial of a new trial in view of the facts that the juror had had only a casual and momentary look at the engine before being warned away by a watchman and that a 14-foot enlarged picture of the engine had been placed in evidence.

Because the necessity of a new trial is a question of fact, we set set out some facts of cases relied on by the parties and compare them to the facts of the present case.

Kime v. Koch, 227 Minn. 372, 35 N. W. (2d) 534, was a personal injury action arising out of a head-on collision on a highway. One of the defendants claimed that two of the jurors had stopped at the scene of the accident and made some measurements. This claim was denied by affidavits of both of the accused jurors although it was established that they did drive past the scene every day on their way to and from the trial. This court pointed out that there had been a general jury view and sustained the denial of a new trial.

In MacKinnon v. City of Minneapolis, 117 Minn. 261, 135 N. W. 814, also a personal injury case, two jurors went to the place where plaintiff claimed to have fallen due to a defect in the sidewalk. The trial court denied a new trial and this court sustained the decision indicating that there was no showing of actual prejudice, that the jurors saw the area in daylight whereas the accident happened at night, and that by the time the jurors viewed the area all evidence of the alleged defect had been removed.

In Spinner v. McDermott, 190 Minn. 390, 251 N. W. 908, the issue for the jury was the amount of plaintiff's loss due to defendant's negligent failure to insure plaintiff's house against fire damage. During the course of the trial two of the jurors, one of whom was the foreman, went to the house and examined it inside and out and, before the case was submitted to the jury,

reported to other members the condition and value of the house. The trial court denied a new trial and this court reversed, pointing out that there is a legal presumption of prejudice from such jury misconduct and that no proof had been adduced to rebut it.

Rush v. St. Paul City Ry. Co. 70 Minn. 5, 72 N. W. 733, was a personal injury action in which the two basic issues were distance and speed. Two of the jurors went independently to the scene to examine it and test the testimony given, and one of these two drew a map which he exhibited to other jurors. The trial court denied a motion for new trial and this court reversed. After pointing out that granting a new trial in all cases in which there had been an unauthorized view would impose an unfair burden on innocent litigants, the court stated (70 Minn. 9, 72 N. W. 734) that where the gist of the action is the character or condition of the premises involved or where a view of the property will enable the jurors to better determine the credibility of the witnesses or any other disputed fact in the case, and jurors without the permission of the court or the knowledge of the parties visit the locality for the express purpose of acquiring such information, their verdict will be set aside unless it is clear that their misconduct could not and did not influence the verdict. We said also that jurors should not go on private searches for evidence in such cases and make inspections of their own accord, because the parties have no opportunity of meeting, explaining, or rebutting evidence so obtained. However, we added that the rule must be applied reasonably, and not where there is only a possibility that the result was influenced by the alleged misconduct; but that it can be applied where the court cannot determine with any reasonable certainty whether or not the result was affected.

It should be noted that in both Rush and Spinner this court did not accord any weight to affidavits presented by the offending jurors to the effect that the verdict was based only on the evidence obtained in court.

The present case would seem to lie on a middle ground between those cases cited in which a new trial was denied and those in which one was granted. It is clearly a case in which the nature or character of the locus in quo is involved, inasmuch as the value of the tract was the only issue the jury was called upon to decide.

The difference between this case and those cited in which there was a general jury view, as well as the unauthorized one, is that in the present case it is clear that the jury saw the property prior to the time any testimony was taken and therefore had to test the witnesses' testimony against their recollection of the premises. There having been no expert testimony on value and the way in which the experts arrived at their valuations at the time of the general viewing, the jurors had nothing specific to look for. When the one juror went out by himself, on the other hand, his apparent intent was to check the testimony of the experts against a personal opinion formed by direct observation. There were, in all probability, specific things to which his attention had been called during the course of the trial that he could look for. Whether the low ground was usable for houses had a definite bearing on the value to be placed on the property since, at the time of the trial, the area was zoned for single-family units only. Also, appellants had introduced a proposed development plan under which apartment buildings would be built on the low ground and had offered evidence as to the chances of obtaining a rezoning of the area. Obviously, if the land was suited for such development, its value would be increased.

Although it is not clear from the cases whether there must be a positive showing of prejudice, MacKinnon v. City of Minneapolis, *supra*, or whether there is a presumption of prejudice which must be rebutted, Spinner v. McDermott, *supra*, it can at least be said that where this court cannot say with reasonable certainty that no prejudice resulted, a new trial should be granted. This is a matter which we must determine, giving due weight to the conclusion of the trial court that a new trial was not justified. On the record before us we cannot say that the

trial court abused its discretion in denying appellants' motion for a new trial.

■ Appellants contend that the trial court erred in admitting into evidence the price they paid for the property when they purchased it in December 1965 on the ground that the transaction was a forced sale on the part of Arneson. They point to the affidavits by two of the jurors to show that the jury relied on that evidence. This amounts to impeachment of a verdict by juror affidavit and is clearly not allowed.

This court considered the question of whether evidence of the price paid by the condemnee is admissible in State, by Mattson, v. Schoberg, 279 Minn. 145, 155 N. W. (2d) 750. There the court held that evidence of the price paid by the owner for a three-fourths interest in a partition action 2 or 3 years prior to the condemnation proceeding was properly admitted on cross-examination where the owner had testified as to the value of the property. The court quoted with approval from 5 Nichols, Eminent Domain (Rev. 3 ed.) § 21.2 as follows (279 Minn. 148, 155 N. W. [2d] 753):

"When a parcel of land is taken by eminent domain, the price which the owner paid for it when he acquired it is one of the most important pieces of evidence in determining its present value, provided the sale was recent, and was a voluntary transaction between parties each of whom was capable and desirous of protecting his own interests, and no change in conditions or marked fluctuation in values has occurred since the sale."

The court went on to state that it believed the rule should be that such evidence is admissible (279 Minn. 149, 155 N. W. [2d] 753) "if not too remote in time and if other factors affecting market value have remained reasonably stable so that they are the same as the factors which existed at the time of the condemnation."

Obviously, the issue raised by appellants here is whether this was a sale in which each of the parties was "capable and desirous of protecting his own interests." They point to the fact

that the real estate agent, Satterlund, testified that Arneson was willing to "practically give [the property] away" to get cash for another deal and there was no prolonged bargaining over the price. According to him, the appellants simply took the property at the price at which it was offered. Also, appellants argue that the fact that, without previous offer of sale to anyone, the property was put up for sale and sold in less than a day indicates that the price paid is not a fair indication of its true market value.

Appellants' argument does not appear to be persuasive. Conceding the fact that the price paid in forced-sale circumstances should not be admitted and that the exigencies of a business situation may bring a sale within the forced-sale category, this does not appear to be such a case. There is no indication that Arneson was doing anything more than liquidating one business asset in order to obtain cash to take advantage of what he believed to be a good business deal in another area. If this is the case, although he might have felt compelled by the circumstances to sell the property involved here, this would not seem to qualify the sale as a forced sale, since the only force was his own business judgment as to which was the more advantageous piece of property to own. It has been so held by the California Supreme Court in Garden Grove School Dist. v. Hendler, 63 Cal. (2d) 141, 45 Cal. Rptr. 313, 403 P. (2d) 721, although that court did reverse the trial court on other grounds.

It should also be noted that the jury had before it all of Satterlund's testimony about the circumstances of the sale. From this evidence and the other evidence as to the value of the property the jury could certainly evaluate the type of sale and the amount of weight to be accorded the sale price. The only possible respect in which the testimony could prejudice appellants is that it could cause the jury to base its verdict on the kind of profit appellants would make rather than on the fair market value of the land itself. Since the admissibility of evidence of purchase price is in the first instance a matter for the sound discretion of the trial court, State, by Mattson, v. Schoberg, *supra,* and the value given

by the jury is in line with the expert opinion of the witnesses produced by the city—in fact exceeds their highest estimate—this does not appear to be a case in which the trial court abused its discretion.

■ A good deal of appellants' argument that the verdict was the result of passion and prejudice is based on the statements in the affidavits of the jurors as to how the jury went about making its award. Clearly such arguments must be disregarded. The rule is that affidavits may not be used to impeach a verdict. This rule is based on sound policy and must be adhered to.

Rejecting the affidavits, as the court must, the claim is reduced to whether the evidence supports the verdict. As stated at the outset, the estimates adduced at trial of the fair market value of the property ranged from an estimate by one of the appellants of $200,000 to that by Howard Lawrence, one of the experts called by the city, of $29,500. The commissioners had awarded $46,000, plus $150 in appraisers' fees. The jury award was $35,000. While the estimates of the witnesses for the city were based on the zoning of the property at the time of the condemnation, appellants' evidence did not establish that there was any certainty the property would be rezoned if the request were made. This was something for the jury to evaluate, and it apparently concluded such rezoning was too speculative.

The amount of the jury award was clearly within the range of the expert estimates offered by both sides. Therefore it is extremely difficult to see how this court can conclude that it was not justified by the evidence. The experts produced by the city were not in its employ and were certainly qualified to express an opinion on land values. It was for the jury to determine which experts should be believed and it is not for this court to overrule that determination, under the record here.

Affirmed.