STATE, BY WALTER F. MONDALE, v.
RAY H. LARSON AND OTHERS.

174 N. W. (2d) 114.

January 5, 1970—No. 41511.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *David J. Byron* and *James Kelly,* Special Assistant Attorneys General, for appellant.

*Johnson, Johnson & Anderson,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Graff, JJ.

GRAFF, JUSTICE.*

This is an appeal from an order denying the motion of the State of Minnesota for a new trial.

The sole question for decision is whether the trial court, under the circumstances in this case, erred in excluding evidence of the purchase price paid by the landowner for property taken by the state in a condemnation proceeding.

The property taken by the state is located in the city of Lake Crystal, Minnesota, on Trunk Highway No. 60. The entire property, consisting of buildings and land, was taken by the state for right of way purposes to upgrade Trunk Highway No. 60 from a two-lane to a four-lane highway. The land taken by the state consisted of 80,600 square feet consisting of five full lots and parts of four other lots. Each full lot was 150 feet deep and 60 feet wide. Located on the property was a main building which was completed in 1945. Two additions to it were completed in 1956 or early 1957 and in 1960. There were also three small buildings, a pump house, a meter house, and a shed, on the property. The main building had a total area of 16,029 square feet. The frontage of the tract on Highway No. 60 was approximately 245 feet and the frontage on Scott Street was 190 feet.

The buildings were built by Land O' Lakes Creamery, which had used the subject property as a creamery and a milk-drying plant. Respondent Ray H. Larson purchased the subject property from Land O' Lakes in October 1962. (Since respondent LaRaine Larson, who is his wife, did not testify at the trial, references to respondent will mean Ray Larson.) Respondent used the subject propert as a feed-manufacturing plant until the state took over the property on July 22, 1965. Respondent manu-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

factured mineral feeds, mineral premixes, vitamin premixes, vitamin antibiotic premixes, and tracer elements for plant food. Before respondent could use the property for his purposes, he had to make a number of adaptations. These adaptations included the taking down of an attached outside fuel oil storage tank and piping; the taking up of a portion of the floor; removal of electrical switches, conduit, and valves; taking down of certain walls; making openings in the boiler room, widening of three doors; removal of concrete pedestals; and removal of some of the roof ventilators and resealing of a portion of the roof after such removal. Respondent testified that nothing was added to the buildings and "most of our alterations were in rearranging."

Respondent paid $27,000 for the property. The award of the commissioners was $64,787.10 and both parties appealed from such award. Respondent testified that the damages for the taking were $207,410; one appraiser testifying for respondents stated that in his opinion the fair and reasonable market value of the property at the time of taking was $170,000; another appraiser for respondents, that it was $165,000. The appraiser testifying for the state gave as his opinion that the fair and reasonable market value was $32,000 at the time of taking. The amount of the jury's award was $106,000. None of the commissioners was called as a witness to testify to the amount of their award. Neither was the jury advised of the amount of the award made by the commissioners.

The record is clear that the question of the admissibility of the purchase price paid by respondent for the subject property was duly considered by the trial court at several stages of the trial. At the conclusion of the first day of trial, Tuesday, January 16, 1968, counsel on both sides presented the trial court with memoranda on the question of the admissibility of the purchase price. The next day, January 17, 1968, the trial court heard additional argument on the question of the admissibility of such sale price. At its conclusion the trial court stated that evidence of the purchase price paid by respondent would not be admissible and

instructed counsel for the state not to cross-examine respondent concerning it. The issue of the purchase price arose again on Friday, January 19, 1968, during cross-examination of respondent by the state. The trial court, upon request of counsel for respondents, cautioned counsel for the state against eliciting the purchase price from the respondent. At the end of that day, the trial court advised counsel for the state that he could not call two witnesses from Land O' Lakes because, as the trial court understood, their testimony as to value would reflect the purchase price.

Court did not convene until Tuesday, January 23. At that time counsel for the state reopened discussion on the admissibility of the purchase price, calling attention to State, by Mattson, v. Schoberg, 279 Minn. 145, 155 N. W. (2d) 750, which had been filed on Friday, January 19, 1968. On the basis of Schoberg, counsel for the state moved the court to permit respondent to be cross-examined to lay a foundation to ascertain the purchase price and to ask him what it was. Counsel indicated that his purpose in so doing was to impeach respondent's opinion of the market value of the subject property. The motion was denied. Counsel for the state then asked whether it would be necessary for him to prove that it was not a forced sale. The trial court replied that that issue would not be determinative but there were other things in Schoberg that might cause the court to change its ruling.

Counsel for the state again renewed his motion on Wednesday, January 24, and again the trial court denied the motion. The trial court then indicated that unless there was expert testimony substantially different than respondent's opinion, the Schoberg rule of admissibility would not be applicable. Thereafter, the experts called by respondents testified that in their respective opinions the fair and reasonable market value of the subject property was $170,000 and $165,000. The next morning counsel for the state again moved to be permitted to cross-examine respondent regarding the purchase price. The motion was denied. In response to a question by counsel for the state, the trial court stated that the

period of 2 1/2 years elapsing between the purchase and the condemnation was not necessarily too long and that the ruling was not made on that basis. The court also said that whether or not the transaction was an arm's length transaction had not been a factor in Schoberg and had no point in this case.

Thereafter, an expert for the state testified that the fair and reasonable market value of the subject property was $32,000. Counsel for the state called respondent for cross-examination under the rules and then began to inquire for the purpose of laying a foundation for the purchase-price testimony. The trial court then stated it had determined that the respondent could not be examined for that purpose and there was no purpose in laying a foundation because no matter what the foundation was, the evidence was not admissible.

1. State, by Mattson, v. Schoberg, *supra,* and City of Bloomington v. Vinge, 284 Minn. 202, 169 N. W. (2d) 752, forged the following rule:

Evidence of the price paid by the landowner for condemned property is admissible on cross examination and is also admissible on direct examination as substantive evidence provided that in each instance the purchase by the landowner was not too remote in time; other factors affecting market value have remained reasonably stable so that they are the same as the factors which existed at the time of the condemnation; and the sale was a voluntary transaction between the parties, each of whom was capable and desirous of protecting his own interests.

In Schoberg, we cited 5 Nichols, Eminent Domain (Rev. 3 ed.) § 21.2, as follows:

"When a parcel of land is taken by eminent domain, the price which the owner paid for it when he acquired it is one of the most important pieces of evidence in determining its present value, provided the sale was recent, and was a voluntary transaction between parties each of whom was capable and desirous of pro-

tecting his own interests, and no change in conditions or marked fluctuation in values has occurred since the sale."

Minnesota is in accord with the general rule allowing the admission of the prior sale price.[1] The Supreme Court of North Carolina in Northgate Shopping Center, Inc. v. State Highway Comm. 265 N. C. 209, 212, 143 S. E. (2d) 244, 246, set out the factors to be weighed in determining admissibility as follows:

"In determining whether such evidence is admissible, the inquiry is whether, under all the circumstances, the purchase price fairly points to the value of the property at the time of the taking. Some of the circumstances to be considered are the changes, if any, which have occurred between the time of purchase by condemnee and the time of taking by condemnor, including physical changes in the property taken, changes in its availability for valuable uses, and changes in the vicinity of the property which might have affected its value. The fact that some changes have taken place does not *per se* render the evidence incompetent. But if the changes have been so extensive that the purchase price does not reasonably point to, or furnish a fair criterion for determining, value at the time of the taking, when purchase price is considered with other evidence affecting value, the evidence of purchase price should be excluded."

Other reasons for the foregoing rule are set forth in Schoberg and Vinge and need not be repeated here. In Schoberg the time between the purchase and the condemnation by the state was 2 to 3 years; in Vinge, it was 4 months; in this case it was 2 years and 9 months. The trial court did not base its rejection on remoteness.

2. The admission of evidence showing the price paid by the landowner for the property is within the discretion of the trial court. It was so held in Vinge and is the general rule.[2] For ex-

---

[1] See, Annotation, 55 A. L. R. (2d) 791.
[2] See, Annotation, 55 A. L. R. (2d) 791, § 8.

ample in Hall v. City of West Des Moines, 245 Iowa 458, 468, 62 N. W. (2d) 734, 740, the court said:

"* * * [T]he question of whether the original purchase was too remote is largely in the trial court's discretion."

Similarly, the Supreme Court of Colorado said in Epstein v. City and County of Denver, 133 Colo. 104, 108, 293 P. (2d) 308, 310, 55 A. L. R. (2d) 783, 788:

"If not too remote in point of time, and if neither economic nor physical conditions have changed, it is uniformly held that voluntary prior sales of the subject property may be shown in evidence in eminent domain proceedings. The determination of these qualifying factors is left largely to the discretion of the trial judge * * *."

3. Notwithstanding the wide discretion given the trial court, it appears that here such discretion was abused.[3] The Schoberg case was misread in that the trial court conditioned cross-examination of the owner as to the purchase price on the absence of other witnesses supporting the owner's testimony as to value. The absence or presence of other witnesses has no bearing on the admissibility of the prior purchase price. Admissibility depends on whether the prior purchase price reflects market value at the time of taking, and this depends on whether the prior purchase price was not remote in time, whether other factors affecting market value have remained reasonably stable, and whether the sale was not a forced sale. It further appears that the trial court concluded that in no event would the prior purchase price be admissible on direct examination. The prior purchase price is just as admissible on direct as on cross-examination. Admis-

---

[3] In Atlantic Refining Co. v. Director of Public Works, 102 R. I. 696, 233 A. (2d) 423, one of the questions was whether it was error to deny cross-examination of the owner concerning the purchase price. The court said, "Moreover, the evidence is of such importance that a refusal to allow the condemnor the right to cross-examine as to the purchase price constitutes reversible error."

sibility in each instance depends on the same factors heretofore set forth.

On the second day of trial, the trial court in a discussion with counsel about the admissibility of the purchase price indicated that it was its understanding that values of land have increased perceptibly year to year and that 2 1/2 years could be a sufficient length of time so that the admission into evidence of the purchase price could be unfair. Later, after the decision in Schoberg was received, the trial court indicated that 2 1/2 years was not necessarily too long a period and that the ruling against admissibility was made on another basis. The only testimony relating to an increase in property values was the statement made by one of the appraisers for respondent that over the last several years there had been a steady increase in cost of land and buildings. The appraiser for the state stated that there were no marked fluctuations in market value of commercial buildings in Lake Crystal between October 1962 and July 1965.

As stated, the effort by the state to lay a foundation for the admission of the purchase-price testimony was rejected by the trial court because of its conclusion that, no matter what the foundation was, the purchase-price testimony should not be received. Thus the record is clear that there was little evidence about a change in market conditions and any contemplated foundation testimony by the state could not be presented. If the increase in land values was normal, it would not appear to be an adequate basis upon which to exclude the purchase-price testimony and a jury could take such increased land values into account. Some courts have said that a rise in land prices alone is not enough to prevent admissibility of the purchase price paid. These courts say the change in value only affects the weight of the evidence. See, Los Angeles County Flood Control Dist. v. McNulty, 59 Cal. (2d) 333, 29 Cal. Rptr. 13, 379 P. (2d) 493, and cases cited. In that particular case, evidence was received to show a change of land values during the period between the purchase and the condemnation. There also was testimony of the price paid

for the property 4 years before the commencement of the condemnation proceedings.

Respondent made some rearrangements in the main building to adapt the subject property from a powdered-milk plant to a feed-manufacturing plant. In doing so nothing was added to the buildings and the adaptations consisted mainly in the removal of certain items. Based on the record it would be difficult to say that the adaptations materially affected the value of the subject property. In any event, the trial could did not base the exclusion of the purchase price upon changes made by such adaptations.

Respondents contend that the sale by Land O' Lakes was a forced sale. Since there was no evidence or offer of proof on this issue and it was not litigated during the trial, the question is not properly before us.[4] Since this case will have to be tried again, however, it may be helpful if some guidelines are set forth concerning forced sales.

In order for the purchase price to be admissible, the sale must have been a sale between a ready and willing buyer and a ready and willing seller. The price paid on a forced sale is not admissible. Forced sales are described in 5 Nichols, Eminent Domain (Rev. 3 ed.) § 21.32:

"Forced sales usually involve transactions in which there is an element of compulsion either on the part of the seller who is obliged to act with undue haste, thereby affording him an inadequate period in which to effect a reasonable deal, or on the part of the purchaser who for purely personal reasons or necessities is compelled to pay a higher price than an ordinary purchaser would be willing to pay. However, it has been said that there is a presumption, in the technical and proper meaning of that word, that the price of land sold was fixed freely and not under compulsion. In the absence of evidence warranting a finding that a sale is made under such compulsion as to make the price inadmissible as evidence of value, consideration may be

---

[4] See, 1B Dunnell, Dig. (3 ed.) § 384.

given to the sale. It has been said that 'involuntary sales' imply compulsion under a decree, execution or something more than inability to maintain the property. The element of compulsion must be based on legal, not economic, factors. For the purpose of determining admissibility of comparable sales, compulsion is not shown to exist where a person is compelled by force of circumstances to part with property which he might desire to hold. Nevertheless, although it has been recognized that the concept of a forced or compulsive sale includes force or compulsion as a result of some kind of legal process, it has been held that compulsion may also be created by business circumstances."

See, also, 4 Nichols, Eminent Domain (Rev. 3 ed.) § 12.3113.

In City of Bloomington v. Vinge, 284 Minn. 202, 210, 169 N. W. (2d) 752, 757, a claim was made that the prior sale was a forced sale. We there said:

"* * * Conceding the fact that the price paid in forced-sale circumstances should not be admitted and that the exigencies of a business situation may bring a sale within the forced-sale category, this does not appear to be such a case. There is no indication that Arneson was doing anything more than liquidating one business asset in order to obtain cash to take advantage of what he believed to be a good business deal in another area. If this is the case, although he might have felt compelled by the circumstances to sell the property involved here, this would not seem to qualify the sale as a forced sale, since the only force was his own business judgment as to which was the more advantageous piece of property to own."

In State v. 123 & 128 Logan St. 55 Del. 487, 500, 188 A. (2d) 513, 520, the Delaware Superior Court said:

"* * * [T]he showing of the circumstances surrounding the sale tend to indicate that Messrs. Bell and Abrams were ready buyers and although the Receiver was anxious to dispose of the property to save money in any effort to conserve it,—particular-

ly against the damage from vandalism which seemed prevalent in the neighborhood—there was no compulsion on him to sell."

For the reasons heretofore stated the judgment must be reversed and a new trial granted.

Reversed and a new trial granted.

