· L. A. POTTER v. HARTZELL PROPELLER, INC.,
AND ANOTHER.
GOPHER AVIATION, INC., THIRD-PARTY DEFENDANT.
MAXWELL AIRCRAFT SERVICE, INC., APPELLANT.

189 N. W. (2d) 499.

August 13, 1971—Nos. 42520, 42957.

*Coulter, Nelson & Sullivan, Mark Sullivan,* and *George Beck,* for appellant.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent plaintiff.

*Carroll, Cronan, Roth & Austin* and *Robert M. Austin,* for respondent Hartzell Propeller.

*Faegre & Benson* and *W. James Fitzmaurice,* for respondent Gopher Aviation.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Kelly, JJ.

PER CURIAM.

Plaintiff's aircraft crashed on a flight from Florida on January 3, 1965, resulting in total loss of the aircraft. Plaintiff recovered from defendant Maxwell Aircraft Service, Inc., the sum of $66,000, plus interest from the date of loss.

The aircraft, a 1957 model E-18-S twin-engined Beechcraft, was purchased by plaintiff on February 6, 1963. It was equipped at that time

with Pratt & Whitney Model R-985-AN-14B engines and Hamilton Standard propellers. Plaintiff purchased from defendant Maxwell new three-bladed propellers, manufactured by defendant Hartzell Propeller, Inc., to replace the original propellers; and on April 29, 1963, these were modified by defendant Maxwell to improve synchronization of the propellers on this twin-engined aircraft. A blade on one of the modified Hartzell propellers fractured during the flight on January 3, 1965, causing the left engine to be wrenched from its mountings and, thereby, causing the accident. The last major overhaul of this left engine was performed on August 14, 1963, by defendant Gopher Aviation, Inc.

The jury, by special verdict, found that the converted propeller which fractured and resulted in the loss of the engine was defective as a result of defendant Maxwell's negligent performance of the work of modification. The other defendants were exonerated from negligence or other responsibility for the crash.

Defendant Maxwell's appeal from the order denying a new trial and from the judgment raises issues concerning the admissibility of certain expert testimony as to the cause of the crash; the claimed concurrent negligence of defendants Hartzell and Gopher, as a matter of law; the admissibility, on the issue of damages, of testimony as to the purchase price of the aircraft; and the right of plaintiff to collect interest on the verdict from the date of loss.

1. Defendant Maxwell's first contention is that it is entitled to a new trial on the issue of liability because the trial court committed prejudicial error in permitting plaintiff's expert to express his opinion on the cause of the accident and in refusing to permit Maxwell's expert to express his opinion on that issue. Maxwell contends that the court imposed inconsistent foundational requirements for reception of testimony by opposing experts.

The record on the issue of causation is both long and complicated, but a short summary of the testimony and proposed testimony of the expert witnesses produced by the parties, together with their asserted qualifications, will suffice for purposes of this narrow issue.

Plaintiff's expert, Dr. Kenneth Packer, was without doubt qualified to give expert testimony. He holds a doctorate in industrial engineering, master of science and bachelor of science degrees in metallurgical engineering, and a bachelor of science degree in chemical engineering. Packer was a Marine Corps pilot during World War II, compiling 1,500 hours of flying time, and also served as acting engineering officer at Cherry Point Marine Air Station. Packer has a commercial pilot's license and is an active pilot. He is president of Packer Engineering Associates, which provides consulting service to industry in materials

and manufacturing processes. This company has done work for a number of clients, including evaluation of skin materials for the trisonic transport aircraft for the Department of Transportation, and work in the failure analysis of components of the timing mechanism for space craft retrorockets for N. A. S. A.

Packer's testimony is long, complex, and detailed, culminating in an opinion that the manner in which defendant Maxwell modified the Hartzell propellers caused the propeller blade to fracture which in turn caused the airplane to crash. One of the blades was broken at the shank, about 4 1/16 inches from the butt end of the blade. The separated portion of the blade was not found, but Packer examined the fractured propeller shaft on November 10, 1966. He found, among other things, that the pilot tube hole in the fractured blade was not, after modification, concentric with the blade. He noted, additionally, that there were machining marks on the surface of the bore and that the bronze bushing and needle bearing were improperly seated, permitting the blade to wobble on the pilot tube.

David Biermann, president of defendant Hartzell, testified that there were two contributing causes of the propeller stress which resulted in the engine loss and crash: The condition of the blade shank (which plaintiff's expert, Packer, testified caused the accident), and damper wear (which defendant Maxwell contends caused the crash). Biermann testified that he had no opinion as to which was the primary and which the secondary cause, although the trial court did admit earlier deposition testimony in which Biermann expressed his opinion that the condition of the dampers was the primary cause and that the condition of the blade shank was possibly a secondary cause of unknown magnitude. Biermann's qualifications, which include bachelor's degrees in mechanical and aeronautical engineering and years of practical experience in propeller research and design, are unchallenged.

Defendant Maxwell's expert was its president, Kenneth Maxwell. Maxwell is not an engineer but has been involved in the aviation industry in some capacity since 1933. For a number of years he did "engine work," and in 1946 he started overhauling propellers, which is his present specialty. Maxwell holds an F. A. A. certification as a propeller repair station operator and is familiar with propellers in the Hartzell line. He testified that he is "quite familiar" with the Pratt & Whitney R-985-AN-14B engine, but admitted that he had never overhauled the engine and that this familiarity had been acquired through contacts with people who had overhauled such engines and to a limited degree from observing the overhaul process. In an attempt to demonstrate his knowledge of engines, Maxwell explained the location of various engine

parts. He also testified that in his business of overhauling and repairing propellers he has occasion to see propellers from damaged aircraft and makes a point of trying to ascertain causes of propeller failure.

Had the trial court permitted Maxwell to give his opinion as to the cause of the propeller failure, he would have testified that the propeller failure was due to the condition of the flyweight liners, dampers, and internal engine parts. The trial court, however, did permit Maxwell to testify as to the effect of the worn condition of the flyweight liners and the flyweights and the galling on the parting surfaces and butt end of the crankshaft. He stated that "with the balancers out of limits, this puts the propeller and the engine in the critical vibration harmonics which are not compatible, as I understand the approval for the propeller on the engine."

Defendant Maxwell contends that the trial court applied inconsistent foundational requirements in permitting Packer, on the one hand, to testify that the use of a boring tool to modify the Hartzell propellers was improper, and in not permitting Maxwell, on the other hand, to testify as to the cause of the propeller failure. More specifically, it is contended that Packer should not have been permitted to express his opinion that the boring tool used by defendant Maxwell could not meet blade tolerance specifications and that it would necessarily produce a nonconcentric hole in relation to the propeller's axis. Packer, as defendant Maxwell notes, had never operated the boring tool, had never seen the tool mounted on a propeller bench, and had only examined the tool in the courtroom.

After careful examination of the record, we conclude that the fact Packer had only examined the tool once did not constitute inadequate foundation since Packer did not base his opinion on that examination but on his experience and knowledge that the boring tool, regardless of its condition, was a type of tool unsuited to the purpose for which Maxwell had used it. It should be observed, in this connection, that defendant Hartzell had expressly directed in an existing service letter that conversion of the propeller blade "must be accomplished at the factory." It is further noted that defendant Maxwell, in using the boring bar, had employed a method contrary to directions issued by the factory in another service letter.

In Teslow v. Minneapolis-Honeywell Regulator Co. 273 Minn. 309, 141 N. W. (2d) 507, we held that this court will not reverse the trial court's ruling on the sufficiency of the foundation to qualify a witness as an expert unless it clearly appears that the trial court erred and that

the error resulted in prejudice to the objector.[1] Applying that rule, we must affirm the trial court's ruling as to the admission of Packer's testimony.

We also affirm the trial court's ruling excluding Maxwell's opinion as to the cause of the propeller failure. Had we been in the position of the trial court, we might have permitted the testimony and left it to counsel to argue, and to the jury to weigh, its worth. However, the test is not whether we would have admitted the testimony but whether the trial court clearly erred in excluding it. We cannot assume that the trial court based its ruling on an erroneous legal standard (e. g., that one is not an expert who does not have a scholastic background) since there is nothing in the record to support such an assumption. Rather, we must assume that the trial court excluded Maxwell's testimony because it determined that Maxwell had neither academic nor practical experience in the causes of propeller failure. Maxwell's testimony as to his own qualifications does not compel a contrary determination, and accordingly we affirm the trial court's ruling excluding the testimony.

2.   Defendant Maxwell does not contend that the evidence does not support the jury's determination of Maxwell's liability, but Maxwell does contend that the trial court should have directed a verdict against defendants Hartzell and Gopher on the ground that they were concurrently negligent as a matter of law.

No purpose would be served by a detailed summary of the evidence. Suffice it to say that, while there was evidence from which the jury could have found Hartzell or Gopher liable along with Maxwell, the evidence did not compel such a finding. The issue of liability, which is normally a question of fact, must be left to the jury except in cases where the evidence is so clear and conclusive as to leave no room for different opinions among reasonable men. Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717. We therefore hold that the trial court properly denied Maxwell's motion for judgment notwithstanding the verdict on the issue of Hartzell's and Gopher's liability.

3.   Maxwell contends that on the issue of damages, involving a determination of the market value of the aircraft at the date of loss, the trial court erred in admitting testimony that plaintiff purchased the aircraft for $86,500, on February 6, 1963.

The rule is that "[a]dmissibility depends on whether the prior purchase price reflects market value at the time of [loss], and this depends

---

[1] Compare with Wigmore's view that the trial court should be allowed to determine "absolutely and without review" the qualifications of witnesses, including expert witnesses. 2 Wigmore, Evidence (3 ed.) § 561.

on whether the prior purchase price was not remote in time, whether other factors affecting market value have remained reasonably stable, and whether the sale was not a forced sale." State, by Mondale, v. Larson, 285 Minn. 467, 473, 174 N. W. (2d) 114, 118. If otherwise admissible, evidence of the prior purchase price is admissible either on direct examination or on cross-examination. Id.

We think the evidence of purchase price was admissible in this situation. Plaintiff purchased the aircraft on February 6, 1963, almost 2 years prior to the date of loss, January 3, 1965. This period of time is less than those involved in condemnation cases such as State, by Mondale, v. Larson, *supra* (condemnation 2 years and 9 months following purchase date), and State, by Mattson, v. Schoberg, 279 Minn. 145, 155 N. W. (2d) 750 (condemnation 2 to 3 years following purchase date). Plaintiff purchased the aircraft after negotiating with the seller for several months, so the sale was not forced. There is evidence that the market value of the aircraft had not changed significantly from the date of purchase to the date of loss and, if it had changed at all, that it had increased.

4. Maxwell contends, and we agree, that the trial court erred in awarding plaintiff interest on the verdict from the date of loss.

In determining whether a plaintiff is entitled to interest on the verdict, we have distinguished between liquidated and unliquidated claims, allowing interest in the case of unliquidated claims only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion (as in actions for personal injury or injury to reputation). Moosbrugger v. McGraw-Edison Co. 284 Minn. 143, 170 N. W. (2d) 72; Employers Lia. Assur. Corp. v. Morse, 261 Minn. 259, 111 N. W. (2d) 620; Grand Forks Lbr. Co. v. McClure Logging Co. 103 Minn. 471, 115 N. W. 406; Swanson v. Andrus, 83 Minn. 505, 86 N. W. 465; Varco v. Chicago, M. & St. P. Ry. Co. 30 Minn. 18, 13 N. W. 921. The rationale for this distinction is that, although in both cases plaintiff actually suffers loss of use of his money from the date of the wrongful act, for which loss he theoretically should be compensated, it would nevertheless be unreasonable to require defendant to compensate plaintiff for this loss where defendant could not have readily determined the amount of damages himself either by computation or reference to generally recognized standards such as market value. The underlying principle is that one who cannot ascertain the amount of damages for which he might be held liable cannot be expected to tender payment and thereby stop the running of interest.

Quite apart from any consideration as to defendant Maxwell's ability to ascertain whether it, or it alone, was liable for the loss, it is unrealistic to say that the amount of such loss could have been readily ascertained. There was, to be sure, no question that the aircraft was a total loss, but the amount of the loss could not be ascertained until the jury had determined it. The estimates of the market value of the aircraft ranged from $45,000 or $48,000 all the way up to $90,000 or $95,000. This range of up to $50,000 and the jury's assessment at $66,000 rather dramatically indicate the absence of an objective standard of measurement for this sophisticated kind of property.

We do not imply, in so holding, that mere difference of opinion between the parties as to amount of damages is sufficient reason alone to excuse a defendant from compensating plaintiff for the loss of use of money for the period between the accrual of a claim and judgment. A dispute as to the amount of damages should not in all circumstances bar the accrual of interest on the damages, else plaintiff's right to interest might depend merely upon the reasonableness of the defendant. Lacey v. Duluth, M. & I. R. Ry. Co. 236 Minn. 104, 51 N. W. (2d) 831; Laycock v. Parker, 103 Wis. 161, 79 N. W. 327. The question is not whether the parties agreed on the amount of damages but whether defendant could have determined the amount of his potential liability from a generally recognized objective standard of measurement, such as readily ascertainable market value. We hold only that on this record defendant Maxwell could not have so readily ascertained the amount of damages as to permit an award of interest from the date of loss.

Affirmed in part; reversed in part.