**HOGS UNLIMITED, a general partnership, Dennis E. Bremer and Curtis Zillgitt, Respondents,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.**

**No. CO–85–2270.**

Court of Appeals of Minnesota.

July 29, 1986.

Review Granted Sept. 24, 1986.

Joseph J. Pingatore, Michael D. Klampe, Klampe & Pingatore, Rochester, for respondents.

Terrence R. Joy, Patricia J. St. Peter, Robins, Zelle, Larson & Kaplan, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Farm Bureau Mutual Insurance Company appeals from a summary judgment determining that it was liable to respondents Dennis E. Bremer and Curtis Zillgitt on an insurance policy covering farm personal property. We affirm.

## FACTS

Hogs Unlimited is a business partnership formed in 1981 for the purpose of breeding and raising hogs. The partners, Dennis Bremer, Curtis Zillgitt and Raymond Cerise, own equal shares. The three partners and Hogs Unlimited were all named insureds under an insurance policy issued by Farm Bureau, which covered 250 hogs owned by the partnership.

On October 31, 1982, 243 of the hogs died of anhydrous ammonia poisoning after an ammonia hose was placed inside the barn housing them. In December 1982 Hogs Unlimited and the three partners submitted a sworn proof of loss statement, claiming the $250,000 limit of liability under the policy. The statement said the origin of the ammonia poisoning was unknown "at this time" and that the Wabasha County Sheriff was investigating the matter.

Farm Bureau Mutual denied the claim, asserting that Raymond Cerise, or someone acting on his behalf, had intentionally placed the ammonia hose in the barn to kill the hogs.

The respondents brought this action in May 1983. Farm Bureau defended against the action on the grounds that Cerise intentionally killed the hogs and that a provision in the policy prohibiting fraud by "the insured" voided the entire policy. In its answers to interrogatories dated September 1983, Farm Bureau stated that it did not claim that Bremer and Zillgitt were in any way involved in any intentional act which caused the death of the animals.

In January 1984 the respondents brought a motion for partial summary judgment on the issue of liability. The trial court granted the motion, ruling that the policy's coverage for vandalism and malicious mischief applied to the incident and that an ambiguous "increase in hazard" exclusion should be interpreted in favor of Bremer and Zillgitt.

The parties subsequently stipulated that the damages sustained were $175,000. Respondents moved for an award of prejudgment interest, which the trial court granted. Judgment was entered in favor of Bremer and Zillgitt for $116,666, their proportionate share of the loss, plus prejudgment interest of $17,549. Farm Bureau appeals from the judgment.

## ISSUES

1. Did the trial court err in determining that Bremer and Zillgitt could recover their proportionate shares of loss under the policy?

2. Did the trial court err in awarding prejudgment interest?

## ANALYSIS

### I

The policy provides that it insures against "[v]andalism or malicious mischief, meaning only the willful and malicious damage to or destruction of the property covered." Language identical to this provi-

sion has been construed to establish coverage upon the showing of both a willful, deliberate act *and* a fixed intent to cause injury to specific property. *See Swedberg v. Battle Creek Mutual Insurance Co.,* 218 Neb. 447, 454, 356 N.W.2d 456, 461 (1984).

■ Farm Bureau claims that Cerise or someone acting on his behalf intentionally killed the hogs by deliberately placing an ammonia hose inside the hog barn. Such an action would come within the coverage language of the policy because it constitutes a willful act undertaken to cause injury to the covered property. Farm Bureau argues that for an act to be malicious it must be done to the property of another. We agree that this precludes coverage for Cerise, but the preclusion does not extend to the other partners, who did not agree to or consent to the destruction. We conclude the claims of Bremer and Zillgitt are within the policy coverage.

■ The policy also contains a concealment/fraud clause, which provides:

This entire policy shall be void if, whether before a loss, the insured has wilfully, or after a loss, the insured has wilfully and with intent to defraud, concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interests of the insured therein.

Farm Bureau contends that Cerise attempted to defraud Farm Bureau when he submitted the proof of loss statement and that his misrepresentation voids the entire policy.

The fraud provision at issue is found in the Minnesota Standard Fire Insurance Policy and is required in every policy of fire insurance issued or delivered in this state. *See* Minn.Stat. § 65A.01, subds. 1, 3 (1984).[1] Farm Bureau urges us to construe this statutory provision to mean that if *any* named insured commits fraud, then the entire policy is void as to *all* the named insureds.

We do not think the legislature intended that named insureds would be required to guarantee and prevent other insureds from engaging in fraudulent actions in order to protect their interests under an insurance policy. Such a construction would constitute an implied limitation on recovery. Limitations or exceptions to recovery are not generally implied, but instead must be plainly expressed. *See Aetna Insurance Co. v. Getchell Steel Treating Co.,* 395 F.2d 12, 18 (8th Cir.1968) (applying Minnesota law).

An almost identical statutory provision was construed in *Morgan v. Cincinnati Insurance Co.,* 411 Mich. 267, 307 N.W.2d 53 (1981), in which the Michigan Supreme Court ruled that

whenever the statutory clause limiting the insurer's liability in case of fraud by the insured is used it will be read to bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud.

*Id.,* 411 Mich. at 277, 307 N.W.2d at 55. Other courts, in construing identical policy language (not mandated by statute), have held that the words "the insured" must be limited to the insured person who attempted to defraud the insurer. *American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136, 146 (Ind.App.1981) (Staton, J., concurring); *Ryan v. MFA Mutual Insurance Co.,* 610 S.W.2d 428, 437 (Tenn.App. 1980); *Hildebrand v. Holyoke Mutual Fire Insurance Co.,* 386 A.2d 329, 331 (Me. 1978). We hold that the policy language concerning fraud and concealment which is mandated by Minn.Stat. § 65A.01, subd. 3, bars only the claim of the insured who attempted or committed the fraud or misrepresentation.[2]

---

1. The policy involved here insured against loss by fire as well as numerous other perils, including vandalism and malicious mischief. Farm Bureau agrees the policy language was required by statute.

2. The trial court did not address the fraud exclusion and based its decision upon a finding that the "increase in hazard" exclusion was ambiguous. The policy, however, waived the "increase in hazard" exclusion, and thus that provision cannot constitute a defense.

Finally, Farm Bureau argues that Cerise's intentional destruction of the hogs was an act within the scope of his authority and his actions bind the other partners under Minn.Stat. § 323.08 (1984). There is no evidence in the record to support this contention. The record contains nothing more than the partnership agreement, which provides that Cerise could write checks for the partnership, keep the books, and buy feed. He could not write checks for more than $1,000. There is nothing in the record which would indicate that he had authority to destroy hogs without the consent of Bremer and Zillgitt. That the destruction of the hogs and the attempt to defraud Farm Bureau may have been economically beneficial to the partnership does not constitute evidence that such an act was within the scope of Cerise's authority. In the absence of fact, we cannot conclude that a genuine issue of material fact exists concerning the scope of Cerise's authority.[3]

Furthermore, we note that Minn.Stat. § 323.08(3) provides that a partner has no authority to do any act which would make it impossible to carry out the *ordinary business* of the partnership. At least one court has held that unauthorized destruction by a partner of a partnership's sole asset cannot be considered an act in the ordinary course of business or within the partner's scope of authority. *See Courts of the Phoenix v. Charter Oak Fire Insurance Co.*, 560 F.Supp. 858, 862 (N.D.Ill. 1983). We conclude there is no genuine issue of material fact and that the trial court properly granted summary judgment.

## II

A party is entitled to prejudgment interest where the claim is liquidated or, if unliquidated, "where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion." *Summit Court, Inc. v. Northern States Power Co.*, 354 N.W.2d 13, 16 (Minn.1984) (quoting

*Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971)).

Hogs Unlimited stated in its proof of loss form that its damages were $428,250. In answers to interrogatories issued in January 1985, the amount of damaged claimed was $218,500. The parties ultimately stipulated to damages of $175,000.

Farm Bureau claims that the discrepancy between respondent's damage claims demonstrates that the damages were not readily ascertainable. The fact that the loss was not *accurately* ascertained initially does not mean it was not readily ascertainable. It appears that the fair market value of hogs of varying characteristics could be reasonably ascertained and, in fact, the parties were able to stipulate to damages, apparently on the basis of generally recognized valuations. The trial court did not err in permitting prejudgment interest.

### DECISION

Affirmed.

---

**3.** Farm Bureau complains that the action was "in the infant stages of discovery" when the trial court granted summary judgment. However, almost eight months passed between the commencement of the action and the motion for summary judgment.