HOGS UNLIMITED, a general
partnership, et al.,
Respondent,

v.

FARM BUREAU MUTUAL
INSURANCE COMPANY,
petitioner, Appellant.

No. CO–85–2270.

Supreme Court of Minnesota.

Feb. 27, 1987.

Terrence R. Joy, Patricia J. St. Peter, Minneapolis, for appellant.

Joseph Pingatore, Rochester, for respondent.

SIMONETT, Justice.

This case raises questions about whether and under what circumstances two innocent partners may recover under a casualty insurance policy for partnership property intentionally destroyed by the third partner. The courts below allowed recovery for two-thirds of the property loss, plus prejudgment interest. We affirm in part, reverse in part, and remand.

Hogs Unlimited is a general partnership, consisting of three partners, Dennis Bremer, Curtis Zillgitt, and Raymond Cerise. The partnership was in the business of raising pigs and had approximately 250 breeding sows. The animals were kept on the farm premises of Cerise, who handled the day-to-day operation. In September 1982, appellant-defendant Farm Bureau Mutual Insurance Company issued an insurance policy covering the partnership personal property, with Hogs Unlimited, Dennis Bremer, Curtis Zillgitt, and Raymond Cerise all listed as named insureds.

Also named in a loss payable clause was Production Credit Association, which held a mortgage on the hogs.

On October 31, 1982, while the policy was in effect, someone placed a hose in the hog barn, releasing anhydrous ammonia and causing the death of 243 hogs. At the time, the partnership owed approximately $40,000 on a feed bill, and the breeding stock was allegedly infected with parvo virus. The partnership had never shown a profit. The three partners submitted a sworn proof of loss claim, stating the cause of the loss was "Apparent anhydrous ammonia poisoning with the origin unknown at this time. The matter is currently under investigation by the Wabasha County Sheriff's Dept." The value of the hogs was alleged to be $428,250, and claimants asked for the $250,000 policy limits under the standard peril coverage for "Vandalism or malicious mischief." Farm Bureau denied the claim, asserting that Raymond Cerise, or someone acting on his behalf, had intentionally destroyed the hogs.

Plaintiffs Hogs Unlimited, Dennis Bremer, and Curtis Zillgitt then commenced this lawsuit against defendant Farm Bureau for recovery of their loss. Plaintiffs did not include Cerise as a party, either as a plaintiff or as a defendant, nor was PCA made a party. Farm Bureau denied liability, asserting that Raymond Cerise, or someone acting on his behalf, had intentionally killed the hogs. Farm Bureau stated it was not claiming Bremer or Zillgitt were in any way involved in causing the loss of the hogs. No one deposed Cerise.

Plaintiffs then moved for summary judgment. The trial court ruled as a matter of law that the destruction of the hogs was "by the willful act of Raymond L. Cerise, independent of the plaintiffs and malicious to their property interests," and that the two individual plaintiffs were entitled to collect their proportionate share of the covered loss. Thereafter the parties stipulated to total damages of $175,000, and the trial court entered judgment for plaintiffs

Dennis Bremer and Curtis Zillgitt for $116,-666, plus prejudgment interest of $17,549.

On appeal, the court of appeals affirmed, holding that there was insurance coverage, that any wrongdoing by Cerise would not bar the two innocent parties from recovering their proportionate shares, and that plaintiffs were entitled to prejudgment interest. *Hogs Unlimited v. Farm Bureau Mutual Insurance Co.*, 390 N.W.2d 886 (Minn.App.1986). We granted Farm Bureau's petition for further review.

**I.**

Apparently the parties agree, for the purpose of this lawsuit, that Raymond Cerise destroyed the hogs.[1] Assuming this to be true, the first issue is whether the loss comes within the covered peril of "Vandalism or malicious mischief," which the policy defines as "meaning only the willful and malicious damage to or destruction of the property covered."

▇▇▇ The policy definition requires that the destruction be both willful and malicious. Clearly, the poisoning of the hogs was intentional, hence willful. But was it also malicious? To be malicious, we think, it is not necessary that there be ill will or a vindictive purpose, but it is enough if the destruction of the property was in conscious or intentional wrongful disregard of the rights of others in the property. *King v. North River Insurance Co.*, 297 S.E.2d 637 (S.C.1982); Couch on Insurance (2d rev. ed.) § 42:631 (1982). In other words, the malice in malicious mischief is directed not at the property itself, but at some individual or legal entity, private or public, having rights in the property. It follows, therefore, that a person who intentionally destroys his or her own property does not commit malicious mischief, for what one deliberately chooses to do to one's own property is not in disregard of one's rights in that property.

▇▇▇ In this case, the hogs were owned by the partnership, Hogs Unlimited. But,

---

1. Thus plaintiffs Bremer and Zillgitt seek to recover only two-thirds of the loss for themselves. Counsel for both parties concede Cerise is free to sue for the remaining one-third.

in addition, each partner is a "coowner with the other partners of specific partnership property holding as a tenant in partnership." Minn.Stat. § 323.24 (1986). *See Kangas v. Winquist*, 207 Minn. 315, 317, 291 N.W. 292, 293–94 (1940). Consequently, in destroying the hogs, at least to the extent Cerise destroyed his own "tenant in partnership" property interest, no malicious mischief occurred.

■ But while Cerise's poisoning of the hogs may not have been in disregard of his own partnership property interest, it was in disregard of the property interests of his copartners. The innocent copartners had legally cognizable, separate though undivided, partnership property interests in the hogs, for which they had understandably sought and obtained insurance protection. Farm Bureau, indeed, recognized these separate insurable interests by listing Zillgitt and Bremer, as well as Hogs Unlimited and Cerise, as separate named insureds. *See Closuit v. Mitby*, 238 Minn. 274, 279, 56 N.W.2d 428, 431 (1953) (a partner has an insurable interest in partnership property). As to the innocent insureds, the malicious destruction of their property was a fortuitous event. We hold, therefore, that Cerise's destruction of the hogs was an act of malicious mischief to the partnership property interests of the two innocent partners and within the coverage of Farm Bureau's policy.

## II.

■ Farm Bureau points out that Cerise attempted to defraud it twice, first, when he destroyed the hogs, and, second, when he stated in the proof of loss that the origin of the poisoning was "unknown." [2] Even if there is malicious mischief coverage for plaintiffs' loss, Farm Bureau contends the coverage is voided by the "fraud clause" in its policy. We disagree.

Farm Bureau's policy says:

This *entire policy* shall be void if, whether before a loss, *the insured* has willfully, or after a loss, *the insured* has willfully and with intent to defraud, concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or the interests of the insured therein. [Emphasis added.]

This policy language is the standard fraud provision required by statute to be in every Minnesota policy. *See* Minn.Stat. § 65A.01, subds. 1, 3 (1986). The issue is what did the legislature mean by the phrase "the insured"? Farm Bureau contends the phrase means if any insured commits fraud, the policy is voided as to all insureds. On the other hand, plaintiffs contend the fraud clause voids the policy only for "the insured," *i.e.,* the particular insured who committed the fraud. We agree with the plaintiffs' position, as did the court of appeals. We do not think the legislature intended to visit the blame of the errant insured on coinsureds who, having no control over the unauthorized conduct, are themselves blameless; nor do we think the legislature intended to make insureds their brother's keeper under penalty of losing their own insurance protection. *See Morgan v. Cincinnati Insurance Co.*, 411 Mich. 267, 307 N.W.2d 53 (1981).[3] We

---

**2.** The proof of loss was signed not only by Cerise, but by Zillgitt and Bremer. Farm Bureau argues this makes Zillgitt and Bremer parties, at least, to a concealment of the fraud. We disagree. So far as Zillgitt and Bremer were concerned, the proof of loss fairly put Farm Bureau on notice that the cause of the hog poisoning, although then unknown to them, was suspicious and under investigation by the sheriff.

**3.** Most courts have found the phrase "the insured" to be ambiguous and have construed it favorably to the innocent insureds. *See Steigler v. Insurance Company of North America*, 384

A.2d 398, 400 (Del.1978); *cf. Spezialetti v. Pacific Employers Insurance Co.*, 759 F.2d 1139, 1141 (3rd Cir.1985). Courts have reasoned the phrase "the insured" is singular and plainly voids the policy only with respect to the insured who commits the fraud. *See Hildebrand v. Holyoke Mutual Fire Insurance Co.*, 386 A.2d 329, 331 (Me.1978); *Morgan v. Cincinnati Insurance Co.*, 411 Mich. 267, 307 N.W.2d 53 (1981). Some courts have noted if the misconduct of *any* insured is to bar the recovery of other insureds, this must be clearly stated. *See Opat v. State Farm Fire & Casualty Insurance Co.*, 542 F.Supp. 1321, 1326–27 (W.D.Pa.1982); *see, gen-*

hold that the phrase "the insured" refers to those persons responsible for the fraud, not to guilty and innocent insureds alike. Hence the policy is not voided as to Zillgitt and Bremer.

## III.

Even if no language in the insurance policy expressly precludes coverage, Farm Bureau argues that public policy should, nevertheless, deny recovery of insurance proceeds to innocent partners. With some caveats, we disagree.

### A.

Early case law from other jurisdictions tended to deny recovery to innocent insureds. Public policy, it was thought, should discourage arson and other crimes, remove opportunities for fraud and collusion against insurers, and avoid making wrongdoing profitable. *See, e.g., American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136, 141 (Ind.App.1981). Nevertheless, the modern trend of case law has been to allow the innocent insured to recover. *See* cases cited in footnote 3, *supra.*

Most of the cases allowing recovery of insurance proceeds have been "innocent spouse" cases. *E.g., Morgan, supra; Kulubis v. Texas Farm Bureau Underwriters Insurance Co.,* 706 S.W.2d 953 (Tex. 1986); *Hedtcke v. Sentry Insurance Co.,* 109 Wis.2d 461, 326 N.W.2d 727 (1982). Generally, the husband and wife are estranged and one spouse torches the home to spite or hurt the other. In such a situation, the likelihood of collusion is slim. In business ventures, however, particularly in

times of failing fortunes, the temptation to collect on insurance covering business assets may be more prevalent and the danger of collusion among investors may be enhanced.[4] For these reasons, Farm Bureau argues that the "innocent spouse" rule should not be extended to business partnerships.

There is very little case law on "innocent partners." In *Continental Insurance Co. v. Gustav's Stable Club, Inc.,* 211 Neb. 1, 317 N.W.2d 734 (1982), the Nebraska Supreme Court denied, at least indirectly, any recovery to an "innocent partner." There a divorced couple owned a failing restaurant as equal stockholders in a subchapter S corporation. The ex-husband, who was in charge of the property, arranged to burn down the restaurant to collect the insurance. Piercing the corporate veil, the court treated the two ex-spouses as partners. Although conceding the ex-wife was innocent of any wrongdoing, the Nebraska Supreme Court ruled that it would be contrary to public policy to permit even the innocent partner to gain financially from the other's arson. This holding is somewhat askew because the corporation, the named insured, was the only party claimant in the lawsuit; the innocent partner did not appear asserting a separate right to some proportionate recovery. Probably, too, it did not help the ex-wife that she took an assignment of the arsonist ex-husband's shares after the fire. A contrary holding is found in *Courts of The Phoenix v. The Charter Oak Fire Insurance Co.,* 560 F.Supp. 858 (N.D.Ill.1983). There the general partner of a limited partnership com-

---

erally, *Haynes v. Hanover Insurance Co.,* 783 F.2d 136 (8th Cir.1986) (involving Missouri law); *Ryan v. MFA Mutual Insurance Co.,* 610 S.W.2d 428, 437 (Tenn.App.1980); *American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136, 141 (Ind.App.1981). *Contra Short v. Oklahoma Farmers Union Insurance Co.,* 619 P.2d 588, 590 (Okla.1980).

**4.** We do not know Cerise's motive in poisoning the hogs. It may have been to spite his partners. It may have been to "benefit" the partnership and himself, or at least to help the two innocent partners, although it would seem the

same benefit could have been obtained by selling the hogs as by destroying them and collecting the insurance. Or Cerise may have felt a "casualty loss" was a way to end an unsuccessful business venture without admitting failure of management on his part.

In any event, ordinarily, the focus is on the "innocent" partners' innocence or lack thereof, not on the motives of the guilty partner, except as those motives might implicate the innocent partners. Here it is conceded the innocent partners are not implicated and, hence, Cerise's motives are irrelevant.

mitted arson to partnership property. Applying Illinois law, the federal district court held that the innocent limited partners could recover insurance proceeds proportionate to their partnership interests. "[T]he wrongdoing of one partner not within the scope of his authority or in furtherance of the partnership business," said the court, "is not attributable to the other partners." *Id.* at 862.[5]

■ It seems to us, notwithstanding the potential for fraud and profit from wrongdoing, that innocent insureds should not suffer for the aberration of a coinsured, whether a spouse or business colleague. We think this is the better public policy. We think it would be unfair and harsh to extend vicarious liability into this context. We hold, therefore, unless forbidden by the insurance contract, that innocent insured partners may recover their proportionate interest under the insurance policy for intentional destruction of their partnership property interest by another partner; provided, however, that (1) the destruction of the property was not within the scope of the wrongdoer's authority nor in furtherance of the partnership's business, and (2) payment of the insurance proceeds to the innocent partners can be accomplished to deny, in a practical manner, any appreciable benefit to the guilty partner.

### B.

■ Contrary to Farm Bureau's contention, there is no fact issue on whether Cerise was acting within the scope of his authority. As a matter of law, he was not.[6] There is no evidence to suggest even an inference that Zillgitt and Bremer authorized Cerise to do what he did. Furthermore, the needless destruction of the hogs, making continuance of the business futile, was not in furtherance of the partnership business. There may be times when the liquidation of assets is in furtherance of a partnership's business, but never Cerise's kind of liquidation.

■ We must reverse and remand this case to the trial court, however, to reconsider the disbursement of the $116,660 to Curtis Zillgitt and Dennis Bremer. Presumably, the award represents a recovery to the innocent partners of their proportionate interests. Presumably the partnership has been dissolved, Minn.Stat. § 323.30 (1986), but not terminated. The insurance proceeds would appear to be subject to claims of partnership creditors. Minn.Stat. § 323.39 (1986). The record indicates at least two substantial creditors, one of whom, the PCA, even has a loss payable clause in Farm Bureau's policy. We do not think the insurance money can be paid directly to Zillgitt and Bremer, without regard for the rights of partnership creditors. On the other hand, use of the insurance money to reduce the partnership debts would seemingly benefit Cerise. We recognize in most cases, especially where there are substantial debts to be paid off, that it is probably impossible to pay the innocent partners without in some degree, even though indirect, also benefiting the guilty partner. The solution to this dilemma

---

5. In community property states, property is held by the spouses in a kind of partnership. Thus Farm Bureau cites *Norman v. State Farm Fire & Casualty Co.,* 804 F.2d 1365 (5th Cir.1986), where the Fifth Circuit, applying Texas law, held that an innocent spouse could not recover for the intentional destruction of community property by the other spouse. The New Mexico Supreme Court, however, has held just the opposite, allowing segregation of the spousal interests in the community ("partnership") property when it is necessary to do so in order to avoid injustice. *Delph v. Potomac Insurance Co.,* 95 N.M. 257, 620 P.2d 1282 (1980) (innocent wife can recover half).

6. Under Minn.Stat. § 323.08 (1984), every partner is an agent of the partnership for the purpose of its business,

> unless the partner so acting has in fact no authority to act for the partnership in the particular matter. * * *
> An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by other partners.

Under subparagraph (3) of the same section, unless authorized by the other partners, a partner has no authority to "[d]o any other act which would make it impossible to carry on the ordinary business of a partnership."

must be on a practical, ad hoc basis, leaving much to the discretion of the trial court. If a means can be devised to pay the insurance money without any appreciable benefit to the wrongdoer, recovery should be allowed. Although not a problem here (because the insurance coverage exceeds the total property loss), the innocent insured's recovery should ordinarily be limited to his proportionate interest under the policy coverage for the innocent insured's partnership property interest. Perhaps the insurance proceeds can be applied first to the innocent partners' shares of the partnership obligations. Then, too, the insurance policy gives the insurer subrogation rights against the guilty partner. In this case, on remand we believe that the trial court and counsel can devise a practical solution that protects the creditors and the two innocent partners, while at the same time denying Cerise any appreciable benefit. From the discussion at oral argument, it appears plaintiffs may already be negotiating with PCA along these lines.

### IV.

 Finally, we reverse the award of prejudgment interest. Prejudgment interest in unliquidated claims is awarded when the damages are "readily ascertainable by computation or reference to generally recognized standards such as market value * * *." *Summit Court v. Northern States Power Co.*, 354 N.W.2d 13, 16 (Minn. 1984). Here plaintiffs arrived at a value for the hogs by hiring an expert who examined the business records of the partnership to determine the sex, breed, and physical condition (pregnant or not pregnant) of the hogs and then gave an opinion of market value for that type of hog in October 1982. We do not think, in this case, the *Summit Court* test has been met.

Putting to one side the fact the hogs may have been afflicted with parvo virus, which plaintiffs' counsel admitted could affect market value, the record indicates the hogs were nonfungible breeding stock. Indeed, each sow was separately scheduled with its ear tag number in Farm Bureau's policy.

Ascertaining market value appears to be subject to varying expert opinions involving a number of variables for each animal. Suggestive, too, of the lack of a "readily ascertainable" value is the fact that plaintiffs' proof of loss asked for $428,250, their complaint alleged total damages in like amount, and their answers to defendant's interrogatories put the value of the 243 hogs at $218,500. *See Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 189 N.W.2d 499 (1971) (no prejudgment interest where expert estimates of market value of an airplane varied; no objective standard for measuring market value).

Affirmed in part, reversed in part, and remanded for further proceedings.