# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 12-3528

———————————————

Charles E. Bethel, II; Jennifer Kalsow Frantz

*Plaintiffs - Appellants*

v.

Darwin Select Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 23, 2013
Filed: November 18, 2013

——————————

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Charles Bethel II and Jennifer Frantz appeal the district court's[1] grant of summary judgment in favor of Darwin Select Insurance Company ("Darwin") on their

———————————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

claims for declaratory relief, breach of contract, and breach of implied contractual duties of good faith and fair dealing. For the reasons discussed below, we affirm.

## I. Background

In 2005, Trent Jonas formed Zen Title, LLC, a Minnesota-based title insurance agency. Jonas persuaded Bethel and Frantz to invest both time and money in Zen Title in exchange for minority ownership interests in the company. Frantz also worked for Zen Title as a bookkeeper and title agent from 2005 to 2007. Beginning in May 2006, Zen Title served as an agent for United General Title Insurance Company ("UGT"). Pursuant to this agency relationship, Zen Title was responsible for recording mortgages, deeds, and mortgage satisfactions and paying fees associated with those recordings. Zen Title also had the duty to pay off mortgages on behalf of UGT and its customers to facilitate mortgage refinancing transactions. In order to permit Zen Title to make these payments, UGT entrusted millions of dollars to Zen Title, which was required to maintain the funds in segregated escrow accounts.

In May 2007, Darwin issued a professional liability insurance policy (the "Policy") to Zen Title. The parties agree that Jonas, Bethel, and Frantz qualified as insureds under the Policy. The Policy obligated Darwin to defend and indemnify the insureds against any claim for any "[n]egligent act, error, omission, misstatement, misleading statement, neglect or breach of duty . . . by an Insured, in the performance of or failure to perform Professional Services." However, the Policy excluded from coverage "any Claim . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any actual or alleged . . . loss, disappearance, pilferage or shortage of, or commingling or improper use of, or failure to segregate or safeguard, any client or customer funds, monies, or securities" (the "Customer Funds Exclusion").

In early August 2007, UGT terminated its relationship with Zen Title and filed a six-count complaint in Minnesota state court against Zen Title, Jonas, Bethel, Frantz, and TitleSource, a Minnesota corporation associated with Zen Title. UGT subsequently amended its complaint to add two additional counts. The complaint described a wide-ranging fraudulent scheme to misappropriate the funds entrusted to Zen Title by UGT. UGT alleged that "Zen, and the other Defendants associated with Zen and acting for same, deliberately chose to delay the recording [of mortgage instruments] so as to benefit from the pool of cash escrowed for the purpose of paying recording fees." In addition, Zen Title allegedly failed to use escrowed funds to pay off existing mortgages in mortgage refinancing transactions. The gravamen of UGT's allegations was that the defendants delayed recording mortgage instruments in order to retain and use funds that had been escrowed to pay fees associated with those recordings. In many instances, Zen Title transferred these funds to TitleSource, which had no relationship whatsoever with UGT or its customers. In Count Seven of its complaint—for negligence—UGT alleged that "[b]y failing to file mortgages, satisfactions of mortgages, and other closing documents, by failing to pay associated recording fees, and by failing in at least nine (9) instances to use escrowed funds to pay off the refinanced mortgages, Defendants were negligent and breached their duties of care to UGT." Count One—for breach of contract—contained substantially similar allegations. Neither Count One nor Count Seven specifically alleged any conduct that was unrelated to the general scheme to misappropriate escrowed funds.

The insureds promptly gave notice and tendered defense of UGT's action to Darwin pursuant to the Policy. However, Darwin refused to defend the action, concluding that the entirety of UGT's complaint fell within the Customer Funds Exclusion. Ultimately, in February 2009, all parties to UGT's action entered into a settlement agreement. The settlement agreement required Jonas, Bethel, and Frantz to confess judgment, and it required all defendants to pursue a declaratory judgment action against Darwin to establish Darwin's duty to defend against UGT's lawsuit.

UGT, in turn, agreed not to file the confessions of judgment until the conclusion of the declaratory judgment action.

In July 2011, Bethel and Frantz filed this action in Minnesota state court, alleging that Darwin had breached its duty to defend and its implied duties of good faith and fair dealing under the Policy. Darwin removed the case to federal district court on the basis of diversity of citizenship.[2] *See* 28 U.S.C. §§ 1332(a)(1) and 1441(b). The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of Darwin, concluding that all of UGT's claims fell within the Customer Funds Exclusion and, as such, Darwin owed no duty to defend Bethel and Frantz. Bethel and Frantz timely appealed the grant of summary judgment.

## II. Discussion

We review both a district court's grant of summary judgment and its interpretation of an insurance policy *de novo*. *Land O' Lakes, Inc. v. Emp'rs Ins. Co.*, 728 F.3d 822, 827 (8th Cir. 2013). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that Minnesota substantive law governs this diversity action.

Bethel and Frantz present four arguments that the district court erred in holding that Darwin did not owe them a duty to defend. First, they argue that at least some portions of UGT's complaint arguably fall outside the scope of the Customer Funds Exclusion. Second, they argue that the illusory coverage doctrine renders the district court's interpretation of the Customer Funds Exclusion impermissible. Third, they

---

[2]Darwin is an Arkansas corporation with its principal place of business in Connecticut. Bethel and Frantz are citizens of Minnesota.

argue that the reasonable expectations doctrine required Darwin to defend them even if the entirety of UGT's complaint falls within the Customer Funds Exclusion. Finally, they argue that the innocent insured doctrine precludes Darwin from denying them coverage under the Policy on the basis of the wrongful conduct of Jonas and Zen Title. We find each of these arguments to be without merit.

## A. Customer Funds Exclusion

Bethel and Frantz first argue that some portions of UGT's complaint arguably fall outside the scope of the Customer Funds Exclusion, and thus the Policy obligated Darwin to defend them against UGT's lawsuit. In particular, they argue that the allegations in Count Seven that the defendants in the underlying action had negligently failed to record mortgage instruments do not fall within the Customer Funds Exclusion. The interpretation of an insurance contract, including the determination of whether an insurer owes a duty to defend, is a question of law. *Midwest Family Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). "The duty to defend an insured is contractual and is broader than the duty to indemnify." *Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 349 (Minn. 2010). "The existence of the duty to defend [a] claim is determined by comparing the language of the allegations in the underlying complaint to the relevant language in the insurance policy." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012). An insurer must defend all claims in the complaint if any claim arguably falls within the scope of coverage. *Gen. Cas. Co. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 576 (Minn. 2009). "An insurer trying to avoid a duty to defend 'has the burden of establishing that all parts of the cause of action fall clearly outside the scope of coverage.'" *Id.* (quoting *Metro. Prop. & Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 299 (Minn. 1999)).

Darwin does not contest that UGT's claims fall within the general inclusionary language of the Policy. Instead, Darwin argues that the entirety of UGT's complaint

falls within the Customer Funds Exclusion because all of UGT's claims "arise out of," result from, or in some way involve the loss or improper use of customer funds. "The phrase 'arising out of' has been given broad meaning by Minnesota courts." *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 649 (8th Cir. 2008). The Minnesota Supreme Court "has defined 'arising out of' broadly as 'originating from,' 'growing out of,' or 'flowing from.'" *Wozniak Travel*, 762 N.W.2d at 576. *See also Rausch v. Beech Aircraft Corp.*, 277 N.W.2d 645, 647-48 (Minn. 1979). "[T]he words 'arising out of' in an insurance policy . . . mean 'causally connected with.'" *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 419 (Minn. 1997) (quoting *Faber v. Roelofs*, 250 N.W.2d 817, 822 (Minn. 1977)). Therefore, "'[b]ut for' causation, a cause and result relationship, is enough to satisfy the ['arising out of'] provisions of the policy." *Progressive Cas. Ins. Co. v. Brockway*, 411 N.W.2d 13, 16 (Minn. Ct. App. 1987) (citing *Faber*, 250 N.W.2d at 822).

Darwin is correct that all of UGT's claims flow from, grow out of, or originate in the loss or improper use of UGT's funds. UGT's complaint explicitly links its allegations regarding the failure to record mortgage instruments to the scheme to misappropriate UGT's escrowed funds. UGT explained that the defendants in the underlying action "deliberately chose to delay the recording [of mortgage instruments] so as to benefit from the pool of cash escrowed for the purpose of paying recording fees." As described in UGT's complaint, the insureds failed to record mortgage instruments *precisely so that* they could divert the funds that would have had to be paid as filing fees at the time of recording. Thus, as alleged, the insureds failed to record mortgage instruments only because it constituted a necessary component of the broader scheme to misappropriate funds escrowed for filing fees. As such, there is a direct cause-and-effect relationship between all actionable conduct alleged in UGT's complaint and the loss or improper use of customer funds. Similarly, all injuries sustained by UGT occurred only because of the scheme to misappropriate its funds. *See Murray*, 533 F.3d at 650 (holding that a substantially similar exclusion applied because plaintiff would not have suffered any injury but for misappropriation of

funds). Therefore, the entirety of UGT's complaint clearly falls within the Customer Funds Exclusion.

Bethel and Frantz correctly observe that failures to record mortgage instruments *could* occur in the absence of the misappropriation of customer funds. They invite us to "imagine a scenario" in which Bethel and Frantz negligently failed to file mortgage instruments, without any improper handling of the UGT funds entrusted to them. Such a claim would not have fallen within the Customer Funds Exclusion. But this hypothetical presents a very different scenario than that pled in the lawsuit filed by UGT. UGT alleged that Bethel and Frantz failed to record mortgage instruments precisely in order to carry out a scheme to misappropriate UGT funds. UGT did not identify any actionable conduct by Bethel or Frantz that occurred outside the context of that scheme. Bethel and Frantz argue that Minnesota's notice pleading rules did not require UGT to identify the specific circumstances under which each failure to record occurred, and so UGT's claims could possibly be premised on unspecified failures to record that are unrelated to the fraudulent scheme. This argument underestimates the significance of what UGT actually included in its complaint. UGT *did* specifically allege that the defendants failed to record mortgage instruments in order to facilitate the misappropriation of customer funds. UGT *did not* specifically allege any other failures to record. We will not imagine allegations that UGT could have made merely because its actual allegations went beyond the bare minimum of notice pleading. *See Reinsurance Ass'n v. Timmer*, 641 N.W.2d 302, 311 (Minn. Ct. App. 2002) (holding that a court cannot "determine coverage on the basis of claims that could have been made . . . but were not"). As such, the district court did not err in finding that the entirety of UGT's complaint clearly falls within the Customer Funds Exclusion and that Darwin had no duty to defend Bethel and Frantz.

-7-

**B. Illusory Coverage Doctrine**

Bethel and Frantz argue that the expansive interpretation of the phrase "arising out of" is impermissible because it violates Minnesota's illusory coverage doctrine. "Under the doctrine of illusory coverage, 'liability insurance contracts should, if possible, be construed so as not to be a delusion to' the insured." *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995) (quoting *Motor Vehicle Cas. Co. v. Smith*, 76 N.W.2d 486, 490-91 (Minn. 1956)). "[T]he doctrine of illusory coverage is best applied . . . where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* at 119. Bethel and Frantz argue that a broad reading of "arising out of" in the Customer Funds Exclusion would exclude coverage of virtually every possible claim against Zen Title because, as a title agent, "every transaction Zen Title engaged in involved funds in some way, if only because recording mortgages involved the payment of recording fees." They point in particular to two policy endorsements that specifically provide that the Policy covers "financial or investment advice or services, including as to any security, instrument or other investment" and "insurance advice or agent or brokerage services."[3] But, as we noted above, the Customer Funds Exclusion would not have applied had Zen Title merely failed to file mortgage instruments or if Zen Title had simply made errors in the instruments it filed. In those scenarios, no customer funds would have been lost or improperly used. Thus, even reading the Customer Funds Exclusion broadly, the Policy covers a wide range of Zen Title's professional activities, including those implicating the two policy endorsements. It does not, however, cover the conduct pled in UGT's lawsuit. Therefore, the district court's interpretation of the Customer Funds Exclusion does not violate the illusory coverage doctrine.

---

[3]These endorsements were executed in order to modify a separate, unrelated exclusion provision that excludes coverage of claims arising out of various types of financial services and advising.

## C. Reasonable Expectations Doctrine

Bethel and Frantz argue that the reasonable expectations doctrine required Darwin to defend them even if the entirety of UGT's complaint falls within the Customer Funds Exclusion. "[I]n certain limited situations," the reasonable expectations doctrine permits courts to depart from "the literal terms and conditions of [an insurance] policy" in order to "protect the reasonable expectations of the insured with respect to coverage." *W. Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 701 (Minn. 2009). The doctrine "is extremely narrow." *Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 353 (8th Cir. 2009) (applying Minnesota law). It applies only "to 'resolving ambiguity' in policy terms 'and for correcting extreme situations,' such as 'where a party's coverage is significantly different from what the party reasonably believes it has paid for and where the only notice the party has of that difference is an obscure and unexpected provision.'" *W. Bend*, 776 N.W.2d at 701 (quoting *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 49 (Minn. 2008)); *see also Carlson*, 749 N.W.2d at 49 (explaining that the doctrine is limited "to circumstances where the exclusion from coverage was unreasonably hidden"). Here, Bethel and Frantz have not identified any provisions in the Policy as ambiguous. Moreover, the Customer Funds Exclusion is not hidden, obscure, or unexpected. Rather, it is clearly identified as an exclusion within the exclusions section of the Policy. *See Wolters*, 831 N.W.2d at 638-39 (holding that the reasonable expectations doctrine did not apply because the "exclusion was plainly designated as an exclusion"); *Babinski*, 569 F.3d at 353 (holding that the reasonable expectations doctrine did not apply because the exclusion "appears exactly where an insured would expect—in the Policy's exclusions section"); *In re SRC Holding Corp.*, 545 F.3d 661, 671 (8th Cir. 2008) (holding that Minnesota's reasonable expectations doctrine did not apply where exclusion was "not hidden, but clearly set forth in the exclusion section of the policy"). Thus, the reasonable expectations doctrine does not apply in this case.

**D. Innocent Insured Doctrine**

Bethel and Frantz argue that, as "innocent insureds," they should not be denied coverage under the Policy due to the wrongful conduct of Jonas and Zen Title. As an initial matter, Bethel and Frantz did not allege in their complaint or otherwise show that they were "innocent." UGT's complaint alleged that *all* of the defendants in the underlying action—including Bethel and Frantz—took part in the scheme to misappropriate UGT funds. But even if they were innocent, the innocent insured doctrine does not support their position. Bethel and Frantz point to several cases in which the Minnesota Supreme Court has held that the wrongful conduct of one insured did not defeat insurance coverage for co-insureds who did not participate in that conduct. *See Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683 (Minn. 1997); *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.*, 401 N.W.2d 381 (Minn. 1987). However, the policy language at issue in those cases differed in critical respects from the language of the Customer Funds Exclusion. In both *Hogs Unlimited* and *Watson*, whether the policy exclusions before the court applied depended on *who* had engaged in certain conduct. Those exclusions were triggered only if "the insured" took certain actions. *Hogs Unlimited*, 401 N.W.2d at 384; *Watson*, 566 N.W.2d at 691 (interpreting statutory standard fire insurance policy). The court concluded that an exclusion triggered by the acts of "the insured" defeated coverage only for the particular insured that took those acts and not for "innocent" co-insureds. *Hogs Unlimited*, 401 N.W.2d at 385; *Watson*, 566 N.W.2d at 691.

Here, in contrast, application of the Customer Funds Exclusion does not depend on *who* caused the loss or misuse of customer funds. Instead, it focuses on *what* gave rise to the claim. The exclusion applies to "any claim . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any" loss or improper use of customer funds. The plain language of the exclusion makes clear that it applies regardless of whose conduct caused the loss or improper use of customer funds. Unlike the policies at issue in *Hogs Unlimited* and *Watson*, the

Customer Funds Exclusion applies to *any* claim that arises out of *any* loss or improper use of client funds caused by *anyone*, be they a "guilty" insured, an "innocent" insured, or even a non-insured. It is irrelevant whether Bethel or Frantz participated in the wrongful conduct that triggered the Customer Funds Exclusion, so long as UGT's claims arose from some loss or misuse of customer funds. Thus, the innocent insured doctrine did not obligate Darwin to defend Bethel and Frantz.

**E. Breach of Duties of Good Faith and Fair Dealing**

Count III of Bethel and Frantz's complaint raises a claim for breach of the implied contractual duties of good faith and fair dealing. *See Larson v. Anchor Cas. Co.*, 82 N.W.2d 376, 383 (Minn. 1957) (recognizing insurer's duty "to exercise good faith toward the insured"). They premise this claim entirely on Darwin's failure to fulfill its contractual obligation to defend them against UGT's lawsuit. As explained above, Darwin was not obligated by the Policy to defend Bethel and Frantz. Thus, the district court did not err in granting summary judgment in favor of Darwin on Bethel and Frantz's claim for breach of the implied contractual duties of good faith and fair dealing.

**III. Conclusion**

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Darwin.

_____

-11-