*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1640**

Donald A. Rask, et al.,
Appellants,

vs.

James Rask,
Respondent,

Gary Rask, et al.,
Respondents,

Bell State Bank and Trust,
d/b/a Bell Mortgage, et al.,
Defendants.

**Filed May 31, 2016
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Crow Wing County District Court
File No. 18-CV-14-2499

Matthew J. Schaap, Robert B. Bauer, Dougherty, Molenda, Solfest, Hills & Bauer, P.A.,
Apple Valley, Minnesota (for appellants)

Thomas C. Pearson, Daniel M. Hawley, Gammello, Qualley, Pearson & Mallak PLLC,
Baxter, Minnesota (for respondent James Rask)

Ryan R. Dreyer, Eric G. Nasstrom, Morrison Sund PLLC, Minnetonka, Minnesota (for
respondents Gary Rask and Sandra Rask)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and John P. Smith, Judge.[*]

## UNPUBLISHED OPINION

**JOHNSON**, Judge

Three siblings own undivided, one-third interests in lakeshore property. One sibling commenced this action against the other two for a partition of the property. The district court ordered the two defendants to purchase the interest of the plaintiff at a specified amount and ordered the plaintiff to give the defendants a warranty deed. The plaintiff appeals, challenging the district court's form of remedy, its findings of facts concerning the value of the property, and its requirement that the plaintiff provide a warranty deed. We conclude that the district court did not err by ordering the defendants to purchase the interest of the plaintiff and did not err in its findings of fact. But we conclude that the district court erred by requiring the plaintiff to provide the defendants with a warranty deed. Therefore, we affirm in part, reverse in part, and remand for an order requiring the plaintiff to provide the defendants with a quit-claim deed.

## FACTS

In 1962, Milton Rask and Hildur Rask purchased lakeshore property on Pelican Lake in Crow Wing County. The property has 200 feet of shoreline on the south side of the lake. At the time of the purchase, there was a small, simple, seasonal cabin on the eastern half of the property.

_____

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2

In 1985, Milton and Hildur executed a quit-claim deed to transfer their fee interest in the property to their three children, James Rask, Gary Rask, and Donald Rask, in equal undivided interests, subject to life estates reserved to Milton and Hildur.

The evidence presented at trial reveals that all three brothers historically spent leisure time at Pelican Lake, that both Gary and Donald maintained primary residences in the Twin Cities area, that both were married with children, and that both were gainfully employed. James did not testify at trial. The record indicates that he never has married, has some unspecified limitations on his capacity, and has executed a power of attorney that names Gary as his attorney-in-fact.

At some point in time, interpersonal conflicts developed between Gary and Donald and their respective families, and Donald and his family ceased spending time at the Pelican Lake cabin. In 1998, Donald purchased a cabin on another lake. He returned to the Pelican Lake cabin only once until approximately three weeks before trial.

Milton died in 2000. At the time, James, Gary, and Donald were approximately 57, 54, and 49 years old, respectively. In 2002 and 2003, Gary demolished the existing cabin and built a larger, year-round home in approximately the same place as the old cabin on the eastern half of the property. Gary spent $675,000 of his own funds to build the new cabin, all of which he borrowed. Neither James nor Donald contributed any funds to the construction of the new home or signed the promissory note for the construction loan, but neither objected to Gary's improvements. Hildur, Gary, James, and Donald executed a mortgage to secure the repayment of Gary's loan, and they executed another mortgage in 2010 when Gary obtained refinancing. After the new cabin was completed, James

3

contributed approximately $19,000 to the payment of property taxes and approximately $2,400 to maintenance expenses. Donald did not contribute to the payment of property taxes or maintenance expenses after Gary built the new home. Gary testified that he wanted Donald and his family to resume visits to the cabin and attempted to facilitate Donald's use of the improved property.

Hildur died in 2013. In June 2014, Donald (and his wife, Sharon Rask) commenced this action against James and Gary (and Gary's wife, Sandra Rask).[1] Donald alleged in the complaint that the property can be subdivided into two parcels but cannot be subdivided into three parcels because of local zoning ordinances. Donald asserted two claims. In count 1, he requested that the district court subdivide the property into two parcels, order a public sale of each parcel, and order that the proceeds of the sale be divided among the three co-tenants. In count 2, Donald alleged a claim of unjust enrichment against Gary based on his exclusive use of the property between 2002 and 2014 and requested an award of money damages.

In July 2014, James served and filed his answer, which included a counterclaim of unjust enrichment against Donald based on allegations that he did not expend any of his funds on taxes, maintenance, and improvements but nonetheless stood to benefit from the expenditures of the other co-tenants.

---

[1]For the sake of simplicity, we will refer to the three siblings throughout the remainder of this opinion as the parties in interest, even though two spouses also are parties to the action.

4

Also in July 2014, Gary served and filed an answer, which included four counterclaims against Donald. In counterclaim count 1, Gary alleged that the property cannot be subdivided and, accordingly, requested that the district court either (a) order James and Gary to purchase Donald's interest in the property at fair market value, less offsets for James's and Gary's expenditures on the property, or (b) order a private sale of the property among the parties. In count 2, Gary requested an accounting of the parties' respective expenditures on the property. In count 3, Gary alleged a claim of contribution against Donald to accomplish an equal allocation of expenditures on the property. In count 4, Gary sought "a declaration of the parties' rights relative to" the property, "including the amounts that Plaintiffs rightfully owe for their fair share of its improvements, upkeep, maintenance and expenses." Gary's fourth counterclaim also seeks relief against James and, to that extent, is properly characterized as a cross-claim.

In January 2015, Donald moved for summary judgment. He requested that the district court issue an order for a sale of the property and an order subdividing the property into two parcels, if appropriate. In March 2015, after hearing oral arguments on the motion, the district court appointed three referees, Jim Ruttger, William Ludenia, and Bruce Larson, "to advise the Court on the potential sale" of the property. The district court directed each referee to issue a report concerning, among other things, the estimated value of the property and whether subdividing the property would increase its value. The district court did not otherwise rule on Donald's motion for summary judgment.

In June 2015, the case was tried to the district court over three days. In September 2015, the district court issued an eight-page order with its findings of fact, conclusions of

5

law, and order for judgment. The district court found that the value of the entire property in its present condition is $1,285,000 and that the value of the undeveloped property (*i.e.*, if the property did not include the newly constructed home) would be $800,000. The district court found that the amount of Gary's expenditures to improve the property exceeded the increase in market value arising from those expenditures. The district court determined that the fair market value of the property should be determined based on the value of the property if it were undeveloped. The district court ordered James and Gary to buy Donald's one-third interest in the $800,000 property by paying Donald $266,666. The district court also ordered Donald to give James and Gary a warranty deed. The district court concluded the order by stating, "All other claims made by Plaintiffs and Defendants are dismissed with prejudice." Donald appeals.

## D E C I S I O N

### I. Form of Remedy

Donald first argues that the district court erred by ordering a buy-out of his one-third interest instead of ordering a partition by public sale. He contends that the district court's means of resolving the case is contrary to the applicable partition statutes.

### A.

We begin by reviewing the applicable law. An action to partition real property is governed by chapter 558 of the Minnesota Statutes. The provisions of that chapter and the caselaw provide multiple means by which a district court may resolve a partition action.

First, a district court may order a partition in kind. Minn. Stat. § 558.01 (2012). A partition in kind is the "physical division of property held in tenancy in common."

7 Richard R. Powell et al., *Powell on Real Property* § 50.07[4][a], at 50-46.2 (Michael Allen Wolf ed., 2000). For example, a property owned by four co-tenants could be divided into four lots of equal size and value.

Second, a district court may order a partition in kind with compensation. Minn. Stat. § 558.11 (2012). "When it appears that partition cannot be made equal between the parties without prejudice to the rights or interests of some, the court may adjudge compensation to be made by one to another for equality of partition." *Id.* Compensation under these circumstances sometimes is called owelty. *See, e.g., Kauffman v. Eckhardt*, 195 Minn. 569, 573, 263 N.W. 610, 612 (1935) (stating that district court could use owelty to compensate party who receives farmland worth less than cotenant's farmland after partition); *see also Black's Law Dictionary* 1279 (10th ed. 2014). Owelty may be ordered "in an appropriate case without the consent of the tenant whose interest is charged." *Hoerr v. Hoerr*, 140 Minn. 223, 225, 165 N.W. 472, 473 (1917). But owelty should be used with caution and only "when necessary to make an equitable and fair division." *Id.* at 226, 165 N.W. at 474.

Third, a district court may order a partition by private sale. Minn. Stat. § 558.14 (2012); *see also* Minn. Stat. § 558.17 (2012). "[I]f it is alleged in the complaint and established by evidence that the property, or any part of it, is so situated that partition cannot be had without great prejudice to the owners, the court may order a sale of the property or of such part." Minn. Stat. § 558.14. A court may order that property be sold by private sale only if it is in "the best interests of the owners of the property." Minn. Stat. § 558.17. In a private sale, the property must be appraised by two or more disinterested

7

persons, and the property cannot be sold for less than its appraised value. *Id.* Various

statutory provisions govern particular aspects of a partition by private sale, such as liens

on property, apportionment of costs, application of proceeds, and the manner of sale. *See,*

*e.g.*, Minn. Stat. §§ 558.09, .10, .14, .15, .17, .18, .19, .22, .24 (2012).

Fourth, a district court may order a partition by public sale. Minn. Stat. § 558.17.

In a public sale, "[t]he sale may be by public auction to the highest bidder for cash, upon

published notice in the manner required for the sale of real property on execution." *Id.*;

*see also Jallo v. Jallo*, 219 Minn. 241, 17 N.W.2d 710 (1945). In a public sale, notice must

be published stating the terms of the sale and whether the property is subject to a prior

estate, charge, or lien. Minn. Stat. § 558.17. Various statutory provisions governing

private sales also may apply to a public sale. *See, e.g.*, Minn. Stat. §§ 558.09, .18, .19, .22,

.24.

Fifth, a district court may order a partition by set-off. Minn. Stat. § 558.12 (2012).

The pertinent statute provides:

> When the premises consist of a mill or other tenement which cannot be divided without damage to the owners, or when any specified part is of greater value than either party's share, and cannot be divided without damage to the owners, the whole premises or the part so incapable of division may be set off to any party who will accept it, that party paying to one or more of the others such sums of money as the referees award to make the partition just and equal; or the referees may assign the exclusive occupancy and enjoyment of the whole or of such part to each of the parties alternately for specified times, in proportion to their respective interests.

*Id.*

In addition to the statutorily authorized forms of remedies, a district court may fashion an appropriate remedy for a particular case by relying on equitable principles. A district court

> may exercise its general equitable powers and resort to the most advantageous plans which the nature of the particular case admits in effecting, without great prejudice to any of the owners, a partition of one or more tracts, whether such partition be accomplished by a division in kind, by sale, or by any practical combination of both methods.

*Swogger v. Taylor*, 243 Minn. 458, 466-67, 68 N.W.2d 376, 383 (1955); *see also Andersen v. Andersen*, 376 N.W.2d 711, 716 (Minn. App. 1985) (quoting *Carlson v. Olson*, 256 N.W.2d 249, 255 (Minn. 1977)). A district court may use its "significant" equitable powers to "fill out the silent spaces in the partition statutes" because a district court's power to resolve a partition action is not confined to the statutory provisions. *Swogger*, 243 Minn. at 461-64, 68 N.W.2d at 380-82.

Although several options are available to a district court, "the law favors partition in kind rather than a sale and a division of the proceeds among the owners," so long as a partition in kind "can be had without great prejudice to the owners." *Id.* at 467, 68 N.W.2d at 384. The term "prejudice," in this context, means that "the value of each share if [physical] partition is made will be *materially* less than the share of money equivalent that could probably be had on a sale of the whole." *Beebout v. Beebout,* 447 N.W.2d 465, 467 (Minn. App. 1989) (alterations in original) (quoting *Pigeon River Lumber Co. v. McDougall*, 169 Minn. 83, 87, 210 N.W. 850, 852 (1926)). "The law favors partition in

kind, as opposed to partition by sale, as the former does not force a person to sell his or her private property." *Id.*

**B.**

We continue by reviewing the district court's decision in the context of the panoply of remedies discussed above. The district court did not select any of the above-described partition remedies by label. Rather, the district court simply stated that "the most equitable solution to this dispute is to order [Gary and James] to purchase [Donald's] interest in the Pelican Lake Property." Donald contends that the district court erred by not invoking a statutorily authorized remedy, specifically, the remedy of a public sale.

We do not agree with Donald's assertion that the district court did not utilize any of the remedies that are specifically authorized by statute. It is true that the district court did not order a partition in kind, with or without compensation. It also is true that the district court did not order a public sale. But the district court's chosen remedy could be characterized as either a private sale or a set-off. The district court's chosen remedy also could be characterized as an equitable remedy that is authorized by *Swogger*. It is unnecessary to categorize the district court's remedy definitively because, in any event, the district court's remedy is authorized by law.

To resolve Donald's argument, we must determine whether the district court erred by ordering a private sale, a set-off, or a customized equitable remedy instead of the remedy Donald suggested, *i.e.*, a public sale. We need not consider whether a partition in kind, with or without compensation, might have been more appropriate because no party suggested a partition in kind, either in a pleading or in an argument at trial. Donald could

10

have asked the district court to order a partition in kind. For example, Donald could have asked the district court to divide the property into two lots (an eastern lot with the modern home for Gary and an undeveloped western lot for Donald) and to provide for James in some manner, either by maintaining his interest in one lot or both lots or by awarding him compensation for his one-third interest in the entire property. Such a request would have been in harmony with the principle that "[t]he law favors partition in kind, as opposed to partition by sale, as the former does not force a person to sell his or her private property." *Beebout,* 447 N.W.2d at 467. If Donald had made such a request, and if the district court had ordered such relief, Donald could have sold the western lot to the public, thereby realizing directly the market value of a lakeshore lot in that location.

But Donald did not ask for partition in kind. Rather, he asked the district court to order a remedy that would require all members of the extended family to sell a property that James and Gary wish to retain. Donald's sought-after remedy would have put Gary at risk of being involuntarily divested of his interest in the property. Given Donald's and Gary's respective positions, the district court was presented with the question whether one or more co-tenants should be allowed to retain their interest in the property or whether none of the co-tenants should be allowed to retain their interest in the property without outbidding strangers to the property, even though the market value of the property is capable of proof based on the evidence submitted by the court-appointed referees.

Given the choices reflected by Donald's and Gary's respective positions, the district court was within its discretion to consider the particular circumstances of the case and craft an "advantageous plan[]" based on "the nature of the particular case." *See Swogger*, 243

11

Minn. at 466, 68 N.W.2d at 383. The law of partition favors those remedies that allow the most continuity of ownership and disfavors those remedies that are most disruptive of the pre-existing property rights so as not to "force a person to sell his or her private property." *See Beebout*, 447 N.W.2d at 467; *see also* 68 C.J.S. *Partition* § 122 (2009) ("Partition actions should be fashioned to cause the least degree of harm to the cotenants."); J.W. Oler, Annotation, *Right to Partition in Kind of Mineral or Oil and Gas Land*, 143 A.L.R. 1092, 1096 (1943) (stating generally that partition in kind is favored because it "does not disturb the existing form of inheritance or compel a person to sell his property against his will"). Donald's proposed remedy, a partition by public sale, would be contrary to this principle because it would have forced Gary to put the property on the market.

Donald also contends that the district court should have ordered a partition by public sale on the ground that it is the remedy that is most likely to yield the highest sale price. Donald relies on *State by Mattson v. Schoberg*, 279 Minn. 145, 155 N.W.2d 750 (1968), in which the supreme court stated, "It is the duty of the referees and the court to obtain the highest possible price for the benefit of those entitled to receive the proceeds." *Id.* at 151, 155 N.W.2d at 754. *Schoberg* does not support Donald's contention, primarily because it is a condemnation case, not a partition case. The central issue on appeal was the value of the condemned property. *Id*. at 148, 151, 155 N.W.2d at 752, 754. The supreme court referred to partition law only because the property had been partitioned by a public sale a few years before it was condemned, and the appellant argued in the condemnation appeal that the relatively low price of the partition sale did not reflect the full value of the property. *Id*. at 146, 148-52, 155 N.W.2d at 751-55. At most, *Schoberg* stands for the proposition

12

that *if* a district court orders a partition by public sale, the sale should be conducted in a manner that is designed to obtain the highest price, and the proposition that a district court may refuse to confirm a public sale if it does not achieve that purpose. This meaning is indicated by the sentence immediately following the sentence on which Donald relies, which states, "The court may refuse to confirm the sale where the price is disproportionate to its value," *i.e.*, disproportionally low in comparison to its value. *Id.* at 151, 155 N.W.2d at 754. Donald's interpretation of *Schoberg* is inconsistent with the preference for a remedy that "does not force a person to sell his or her private property." *See Beebout*, 447 N.W.2d at 467. Furthermore, the price of a private sale may be set at an amount that the district court finds to be the market value, *i.e.*, the price that would obtain in a public sale. Accordingly, we reject Donald's contention that the district court had an overriding duty to order a public sale for the purpose of maximizing the sale price.

Thus, the district court did not abuse its discretion by ordering James and Gary to purchase Donald's interest in the property.

## II. Findings Concerning Market Value

Donald next argues that the district court erred in its findings of fact concerning the value of the property. This court applies a clear-error standard of review to a district court's findings of fact in a partition action. *Anderson v. Anderson*, 560 N.W.2d 729, 730 (Minn. App. 1997).

The district court found that the fair market value of the property with improvements is $1,285,000 and that the fair market value of the property without any improvements would be $800,000. The district court found that Gary expended $675,000 in

13

improvements to the property. The district court found that Gary's expenditures in constructing the new cabin "exceeded the increase in market value due to those improvements" (which, by implication, would be $485,000). For that reason, the district court determined that Gary alone should be responsible for the difference between the expenses of improving the property and the increase in market value arising from those improvements (which, by implication, would be $190,000). To fulfill that purpose, the district court found that the fair market value of the property is $800,000 for purposes of determining the price at which James and Gary should purchase Donald's interest.

Donald contends that the district court erred by basing the purchase price on the value of the land as if it were undeveloped. The district court's method of determining the purchase price is supported by *Hunt v. Meeker Cty. Abstract & Loan Co.*, which was considered by the supreme court in two separate appeals. One of two co-tenants sought partition of a two-story building of which each party occupied one story. 128 Minn. 207, 208-10, 150 N.W. 798, 798-99 (1915) (*Hunt I*). The prior occupant of the first story had built a bank vault of brick and steel. *Id.* at 209, 150 N.W. at 798. The supreme court considered whether the district court erred by not adding the value of the vault to the value of the property before partitioning it. 135 Minn. 134, 136, 160 N.W. 496, 496 (1916) (*Hunt II*). The supreme court concluded that it was appropriate for the district court to allow value of the improvement to be retained by the party who was the successor in interest of the co-tenant who had expended funds on the improvement:

> [I]f the permanent improvement placed thereon by the cotenant, to whose interest defendant has succeeded, has added to the present value of the property, it should have such added

14

> value, provided that thereby no harm or disadvantage comes to . . . the cotenant . . . . If a sale be necessary, that amount should first be allotted to respondent from the proceeds of the sale, and the balance divided equally.

*Id.* at 138-39, 160 N.W. at 497-98; *see also Brandin v. Swenson*, 163 Minn. 506, 507, 204 N.W. 468, 469 (1925) (affirming partition in kind in which party who improved portion of property was awarded the improved portion).

Donald contends that *Hunt* is distinguishable because Gary improved the property while he was a remainderman. That fact does not make the case meaningfully different. *Hunt* is applicable because Gary is a "cotenant [who] has made a permanent and valuable improvement upon the real estate involved." *Hunt II*, 135 Minn. at 137, 160 N.W. at 497. Donald also contends that the district court's reasoning is inconsistent with *Day v. Day*, 180 Minn. 151, 230 N.W. 634 (1930), in which a co-tenant was not allowed to recover against another co-tenant for the value of improvements made without an agreement. *Id.* at 156, 230 N.W. at 636. But *Day* is not a partition case; it is a case involving a claim for contribution, which is a distinct theory. *Id.*

Donald also contends that the district court erred by finding that the value of the undeveloped land would be $800,000 rather than a higher amount. Three referees submitted written reports to the court with their opinions of the value of the land as one parcel and as two parcels. Referee Larson valued the property as one parcel at $1,775,000 and as two parcels at $1,950,000. Referee Ludenia valued the property as one parcel at $1,285,000 and as two parcels at $1,420,000. Referee Ruttger valued the property as either one parcel or two parcels at $1,284,000. Specifically, Referee Ruttger estimated the "site

15

value" as $800,000 and the value of the cabin as approximately $484,000. The district court found Referee Ruttger's report to be most credible and essentially adopted his opinions concerning the value of the property. This court generally defers to a district court's credibility determinations. *Andersen*, 376 N.W.2d at 715 (citing Minn. R. Civ. P. 52.01).

Thus, the district court did not err by finding that the fair market value of the property, if undeveloped, is $800,000 and by using that figure as the basis for the price of the transfer of Donald's interest in the property.

### III. Means of Conveyance

Donald last argues that the district court erred by requiring him to convey his interest to James and Gary by a warranty deed and by requiring him to convey his interest without making any provision for the satisfaction of lienholders.

Donald contends that he should have been required to convey his interest in the property by a quit-claim deed rather than a warranty deed. He notes that he obtained his interest by a quit-claim deed, without any warranties of title, and that he has not been in possession of the property. James responds by conceding that it would have been more appropriate for the district court to order a conveyance by a quit-claim deed. Gary does not directly respond to Donald's argument. Neither James nor Gary argues that a limited warranty would be appropriate or necessary.

A warranty deed is a "deed containing one or more covenants of title; esp., a deed that expressly guarantees the grantor's good, clear title and that contains covenants concerning the quality of title, including warranties of seisin, quiet enjoyment, right to

16

convey, freedom from encumbrances, and defense of title against all claims." *Black's Law Dictionary* 504 (10th ed. 2014); *see also* Minn. Stat. § 507.07 (2014); 6A Steven J. Kirsch, *Minnesota Practice* § 43.3, at 67-70 (5th ed. 1990) (describing types of deeds). A quit-claim deed is a deed that "conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid." *Black's Law Dictionary* 503 (10th ed. 2014). Furthermore, a quit-claim deed "excludes any implication that [the grantor] has good title, or any title at all." *Id.*; *see also* Kirsch, *supra*, § 43.3, at 70.

We agree with Donald and James that the district court erred by requiring Donald to convey his interest by a warranty deed instead of a quit-claim deed. Because Donald received his interest in the property by a quit-claim deed, and because he has not been in possession of the property since approximately 1998, he should not be expected to warrant the covenants of title or to bear any risk of liability for possible encumbrances. *See* Minn. Stat. §§ 507.07, .21 (2014); Kirsch, *supra*, § 43.3, at 67-70.

Donald also contends that he should not bear the risk that the lender holding the mortgage securing Gary's refinancing loan will seize the payments made to him by James and Gary. Donald's contention is based on the mortgage's due-on-sale cause, which provides that if the property is sold or transferred without the lender's consent, the lender may require immediate repayment of the loan. All co-tenants executed the mortgage, although Gary is the only co-tenant who signed the promissory note. Donald asserts that, at present, the lender could seize the payments made to him by James and Gary. Donald has not demonstrated that such a seizure is a realistic possibility. It is unclear whether the

17

transfer ordered by the district court is a transfer that triggers the due-on-sale clause of the mortgage. *See* Kirsch, *supra*, § 48.27, at 231. It also is unclear whether a transfer to a person who is a co-tenant, a co-mortgagor, and a borrower on the note would trigger the due-on-sale clause. *Cf. Rayford v. Louisiana Savs. Ass'n.*, 380 So. 2d 1232, 1237-38 (La. App. 1980) (holding that transfer of mortgaged property to co-owner did not trigger due-on-sale clause of mortgage), *review denied* (La. May 9, 1982). It further is unclear why the lender would require Donald rather than Gary pay off the balance of the loan. Thus, Donald has not demonstrated that the district court erred by not providing for the satisfaction of lienholders.

In sum, the district court did not err by ordering James and Gary to purchase Donald's interest in the property and did not err in its findings of fact concerning the value of the property. But the district court erred by ordering Donald to convey his interest in the property to James and Gary by a warranty deed. Therefore, we affirm in part, reverse in part, and remand to the district court for entry of an order that requires Donald to convey his interest in the property to James and Gary by a quit-claim deed.

**Affirmed in part, reversed in part, and remanded.**